HAMILTON, APPELLANT, *v.* THE MONIDAH TRUST ET AL., RESPONDENTS.

(No. 2,601.)

(Submitted June 11, 1909.   Decided June 17, 1909.)

[102 Pac. 335.]

*New Trial—Insufficient Evidence—Duty of Court—Discretion.*

New Trial—Insufficient Evidence—Duty of Court.
    1.   It is the duty of the district court to grant a new trial, if in its opinion the evidence, in weight, did not justify the verdict rendered.
Same—Evidence—Conclusions—Discretion.
    2.   Where, in a boundary dispute, the evidence submitted by plaintiff, upon whom rested the burden of proof, was based chiefly upon conclusions relative to the location of his original stakes, without facts to warrant them, the court did not abuse its discretion in awarding a new trial to defendants.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ACTION by Patrick J. Hamilton against the Monidah Trust, a corporation, and others.   From a judgment granting defendants a new trial, plaintiff appeals.   Affirmed.

*Mr. L. P. Forestell,* and *Mr. I. A. Cohen,* for Appellant.

*Mr. Jas. E. Murray,* and *Mr. W. N. Waugh,* for Respondents.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an action in ejectment brought to recover the possession of the east 10 feet of lot No. 28, in block No. 23, of the original townsite of Butte, in Silver Bow county.   The jury

returned a verdict in favor of the plaintiff, which verdict was, on defendants' motion, set aside by the court and a new trial ordered. From the order granting a new trial, plaintiff appeals.

The ground actually in controversy is .20 of a foot in width at the southerly, or Broadway, end thereof, and runs in a northerly direction for a distance of 50.35 feet, gradually widening as it runs toward the north, until at the northerly end it is .49 of a foot in width; and also a strip of ground on the westerly side of the east 10 feet of lot 28, which is 28 feet 3 inches long and .15 of a foot wide throughout its entire length. A cause between the plaintiff and defendants' grantor, involving the same strip of land, was heretofore in this court on appeal. (See *Hamilton* v. *Murray*, 29 Mont. 80, 74 Pac. 75.) In that case the court speaking through Mr. Commissioner Callaway, said: "The *gravamen* of the action is to discover where the boundary line is between the lands of the plaintiff and defendant. * * * The way to find the boundary line is to actually locate the lines upon the ground, and, if the original stakes can be found, they will be the very best evidence of the exact *locus* of the land in question." In an attempt to make proof as to the location of the original stakes, the plaintiff produced the deposition of an engineer and surveyor, named Malcolm L. McDonald, who testified, in substance: That he made a survey of the ground in 1892 and found the original stake on the north end of the line between lots 28 and 29, and also the stake at the south end of that line. They were badly decayed. "I recognize them as being the original stakes, in comparison with other stakes that I found in the district. They were not government stakes. They were stakes set there by—I believe it was McFarlane, who originally surveyed the townsite. I was familiar with them. By original stakes, I refer to the stakes that were set there at the time the Butte townsite was surveyed. As to whether I know of my own knowledge, I know by comparison with other stakes that are found all over the Butte townsite. They were covered up to some depth. When we got down to the original ground I found the stakes. From my ex-

perience of several years surveying in the Butte district, I was, at the time, entirely familiar with those stakes. I was not there when the original survey was made, and never saw any stakes placed there at the time it was surveyed. Those stakes that I found were covered up. I pretend to say that those stakes were the original town stakes of the Butte survey. I base my conclusion by comparison with other stakes, by comparison with many stakes that were set over the different blocks in the Butte townsite. Whoever surveyed the original townsite, I presume, set them there. I did not see them set there, so I do not know who placed those other stakes there that I compared those particular stakes with. My statement that those were the original stakes is based on the conclusion that the stakes that I compared them with were original townsite stakes, stakes that we have always assumed as being the original townsite stakes. I do not think it was an assumption on my part that those stakes were the same as the original stakes. It was a comparison; I was satisfied at the time that they were, from the fact that they were covered up and were in the original loam. They were just at the bottom of the fill. I should say we had to dig five or six feet at the back, and about eight feet at the south end, before we got to those stakes. One of those stakes was badly decayed, and the other was not. It was nearly destroyed. You could see the shape of the hole, and the decayed wood was in the hole. I should say it was pine wood. I do not remember that I examined it. I was satisfied at the time it was the original stake and never went any further in my investigation. I merely found the stakes and concluded that they were the original stakes, and then I proceeded to take my measurements from those points, assuming that they were in their original position. I had a man dig the stakes up, and I watched and helped him.'' The testimony shows that, in its natural state, a gulch ran through the vicinity of the ground in controversy, and that a portion of the ground, at least, had been filled in to a considerable extent since that time.

It was shown on the part of the defendants that at the trial of the case of *Hamilton* v. *Murray, supra,* the plaintiff testified

as follows: "Q. Now, Mr. Hamilton, you say that there was a stake on the north side, on the alley, between lots 28 and 29. Is that right? A. Yes, sir; between lots 28 and 29. That is right. I recognize them and knew where they were before they were knocked down long enough. Afterward they were knocked down. Q. How long did that stake remain there after it was placed by McFarlane? A. Well, to the best of my knowledge, it remained there for eighteen months or a couple of years after; in fact all the stakes. There was hardly any thoroughfare. There were only a few people in Butte. Q. What became of that stake? Was it knocked down, or did it stay there? A. It was knocked down. I don't know whether it was knocked down or not. But afterward, afterward I am talking about." Samuel Barker, Jr., a civil engineer, testified: "There are no original stakes of the lots of the Butte townsite, and there has not been for several years."

David Mikeljohn testified: "I have been street commissioner of Butte and know the lots on the southeast portion of block 23. I know nothing of the original stakes between lots 28 and 29 prior to the time I was street commissioner. I know of the ground, but not of the stakes. That was in 1883 and 1884. There were no stakes there in 1883 and 1884 that could be found on the northeast corner of that property by Mr. Harper at that time. I was with him. I will state that in the McFarlane [survey] there was a great deal of difficulty in establishing the right lines afterward, on account of the filling, and the dispute came up when they were hunting for the stakes, and there were stakes found; but they could tell nothing about them. * * * To my knowledge there was no distinguishing characteristic of the Butte townsite survey from which you could determine whether or not a stake found upon the ground in 1892 would [be] the original stake. I was with Mr. Harper at the time he made a survey of this ground. It was the time we were surveying for a sewer down that street and filling in that I was with him. It might have been in 1892, but I think it was in 1893." The original townsite survey was made in 1876. The

plaintiff testified that the building owned by the defendant, The Monidah Trust, encroached upon his ground; but his evidence shows that he had no facts to warrant this conclusion. (See *Howie* v. *California Brewery Co.*, 35 Mont. 264, 88 Pac. 1007.)

The foregoing is by no means all of the evidence given at the trial; but it is sufficient to illustrate the situation of the district court at the time the motion for a new trial was submitted. If McDonald found the original stakes in place, then the verdict of the jury was warranted by the testimony, and a new trial should not have been granted. Whether he did or not was a question primarily for the jury to decide; but if the court was of opinion that the evidence, in weight, did not justify the verdict, it was its duty to grant a new trial. (*Harrington* v. *Butte & Boston Min. Co.*, 27 Mont. 1, 69 Pac. 102.) The burden of proof rested upon the plaintiff, and the accuracy of McDonald's map depended upon his testimony as to the location of the original stakes. This testimony at best amounted simply to a conclusion that the stakes found by him were original stakes. In fact, he was unable to say that the stakes formerly seen by him, with which he compared those found in 1892, were original stakes. There was nothing peculiar about the stakes. There is no concrete testimony whatever to the effect that the stakes found in 1892 were original stakes, and the extent of McDonald's testimony is that they resembled other stakes, which he assumed were original stakes. Aside from this the evidence of other witnesses seems to cast considerable doubt upon the value of his evidence. Under these circumstances, we are not prepared to say that the court abused its discretion in granting a new trial, and the order appealed from is therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.