[No. 1691.]

SILLS v. HAWES.

1. CHATTEL MORTGAGES—INSECURITY CLAUSE—FORECLOSURE—EVIDENCE.

Where a chattel mortgage contains a clause to the effect that, if at any time the mortgagee feels insecure or unsafe in his security, he may take immediate possession and proceed to sell the property, the mortgagee has the right to determine for himself whether he is unsafe, but his judgment must be exercised in good faith and upon reasonable grounds or probable cause. To justify a seizure and sale under such clause, the mortgagee need not prove that there was actual danger, but he must show that there was apparent danger, or that he had good reason to believe there was danger that his security was becoming unsafe.

2. PRACTICE—MOTION FOR NEW TRIAL—EXCESSIVE DAMAGE—REMITTITUR—HARMLESS ERROR.

On motion for a new trial on the ground that the verdict was excessive, where the court required the plaintiff to remit part of the amount, if error, it was an error against the plaintiff and could not prejudice

the defendant and is no ground for reversal on defendant's appeal.

3. PRACTICE—EVIDENCE—ERROR CURED.

Error in striking out evidence is cured by afterwards permitting the witness to testify to the facts attempted to be reached by the evidence stricken out.

4. PRACTICE—EVIDENCE—PROOF OF VALUE—HARMLESS ERROR.

On appeal from a judgment for damages in favor of a mortgagor against a mortgagee in a chattel mortgage for wrongfully taking and selling the mortgaged property, error in permitting the plaintiff to testify to the value of the property, without having first qualified himself to testify to the value, is not prejudicial error where the answer of the defendant admitted the taking of the property and that it was sold for more than the amount of the judgment.

*Appeal from the District Court of Gunnison County.*

Mr. THOS. C. BROWN, for appellant.

Mr. S. D. CRUMP, for appellee.

WILSON, J.

Plaintiff Hawes was the owner of a ranch in Saguache county near the city of Gunnison, upon which he resided. In the latter part of November, 1896, he executed to Mrs. Sills, wife of defendant, a promissory note for a certain sum of money, payable twelve months after date; and, to secure its payment, gave to her at the same time a chattel mortgage upon certain horses and other personal property on his ranch. Soon after, he had a conversation with defendant, who, in this as in all other business affairs, acted as agent for his wife, and told him that he thought of going to Cripple Creek in order to secure employment during the winter, and that in such case he would leave some person in charge of his ranch and property. Defendant advised him to go. This is the testimony of the plaintiff and is undisputed. About the first of January following, he did go to Cripple Creek, having first employed a neighbor to look after his stock and other property upon the ranch. About a week after his departure, the defendant went to the ranch and took and

removed therefrom and afterwards sold all of the stock and personal property thereon, including as well that which was embraced in the mortgage as some that was not. He gave no notice to the plaintiff of the seizure or sale until more than two months thereafter, when he wrote him, stating what he had done. At the time of the taking and removal of the personal property, defendant also took possession of the ranch, placing a man in charge and continuing to occupy it. Upon learning the facts, plaintiff returned and commenced this suit to recover damages for the unlawful taking and conversion of the personal property and for the ouster from the ranch. Defendant answered, setting up that in all things he acted as agent for his wife, and that he took possession of and sold the personal property by virtue of a certain provision in the mortgage which reads as follows :

"If at any time hereafter before said indebtedness shall be fully paid, said party of the second part, her assigns or legal representatives, shall feel insecure or unsafe in this security, then and in any such case, said party of the second part, her heirs or legal representatives, or the agent of them or either of them, may take immediate and full possession of the aforesaid property, goods and chattels, and any and every part thereof, * * * and proceed to sell the same," etc.

In answer to the second count in the complaint, with reference to the taking possession of the ranch by the mortgagee, it was alleged that plaintiff had abandoned the ranch, and notified the mortgagee of the same, and agreed with her that she might go upon the ranch and harvest and dispose of the hay thereon and credit the same upon the note of plaintiff. Trial was to a jury and verdict and judgment were in favor of plaintiff.

The chief argument and contention of defendant is based upon this insecurity clause in the mortgage. The court among other instructions gave the following :

"If the jury shall find and believe from the evidence that the defendant, acting as the agent of the holder of the mortgage, really and in good faith believed that this security was

becoming unsafe, and had a right so to believe from the facts which he knew personally, or which had been communicated to him, then he had a right to take any property which was covered by the mortgage and dispose of it, and that he might do lawfully even though said security was not in fact becoming unsafe."

The defendant insists that this instruction was error. He claims that this provision in the mortgage is for the benefit of the mortgagee, and that upon his taking possession under it, before default, no proof is required to show that he considered himself unsafe, the legal presumption being that such was the fact; that the mortgagee is the sole judge of the happening of the contingency upon which he may take possession; that such a clause vests in the mortgagee an absolute discretion to take possession of the property whenever he may deem himself insecure, and the exercise of this right does not depend upon the fact that he has reasonable ground for deeming himself insecure. We cannot indorse such a harsh and arbitrary doctrine. It is true that there is some authority in support of this rule, but the great weight of modern authority, as well as reason and justice, it appears to us, are against it. The true rule, it seems to us, should be, and is, that the mortgagee has the right to determine for himself whether he is unsafe in his security, subject, however, to the limitation upon this right that his judgment must be exercised in good faith and upon reasonable grounds or probable cause. We do not go to the extent of saying that he must prove there was actual danger, but we think he should be required to show that there was apparent danger, or that he had good reason to believe there was such grounds for such belief that a reasonable man might in good faith act upon. The object of a chattel mortgage is usually to give the mortgagor the possession, use and enjoyment of the property during the time the indebtedness runs, as well as to secure the payment of the indebtedness. The rule contended for by defendant would give the mortgagee the power to absolutely defeat the whole object and purpose of the

mortgage at his own arbitrary will and pleasure. He might turn around upon the very next day after a mortgage was executed, and, under such a clause, take possession of and sell at forced sale all of the mortgaged property, and say to the outraged mortgagor, "You have no redress. You have no cause of complaint. I feel myself insecure, and you cannot question my belief." Surely the law does not contemplate that it may be the instrument of such unconscionable oppression. The doctrine which we have announced, and to which we adhere, seems to have the general support of the later authorities. *Roy v. Goings*, 96 Ill. 361; *Furlong v. Cox*, 77 Ill. 294; *Bank v. Teat*, 46 Pac. Rep. (Okla.) 474; *New-lean & Hoard v. Olson*, 22 Neb. 717; 2 Cobby Chattel, Mortgages, § 856, *et seq.*

We think that the instruction of the court was correct, and was fully as favorable to the defendant as the law would permit. Possibly the phraseology might be subject to some technical objection, but the ideas conveyed by the language express the true rule, and we do not see how it was possible for the jury to have been misled in any manner. The chief authority relied upon by defendant in support of his contention is from New York,—*Smith v. Post*, 1 Hun, 517. This decision was rendered in 1874. In 1892, the supreme court of New York, in another case involving this same question, said:

"The authorities seem to be to the effect that when a mortgagee assumes to take possession of the mortgaged property under the safety clause before default, he must show some ground for claiming that he deems himself insecure." *Hawver v. Bell*, 19 N. Y. Supp. 612.

The defendant filed a motion for a new trial, among other grounds for asking which, alleging that the damages were excessive. In hearing this motion, the court seems to have considered this objection well taken, and suggested that upon condition the plaintiff remitted the sum of $105, from the verdict of the jury, the motion would be overruled, otherwise, it would be sustained. The plaintiff in open court

electing to remit the amount suggested, the motion was denied. Defendant insists that this is reversible error. He contends that the court had no right to substitute its judgment for that of the jury as to the amount of the damages, and that it had no right nor power to ask the plaintiff to remit in a suit of this character, where it was an action for unliquidated damages; that such power exists, if at all, only in actions for liquidated damages, and where there has been an error in computation or of some similar character. If this be true, why does the code provide as one of the grounds for a new trial, which the unsuccessful party may urge, that the damages awarded were excessive, and why did the defendant include this ground in his motion for a new trial. If the finding of the jury is absolutely conclusive, the code provision would be a nullity. The position of defendant is, that in such case, the court has no alternative except to award a new trial if it believes the damages given by the verdict of the jury to have been excessive. We do not believe such to be the rule, and certainly it is not in accord with general, and we may say universal, practice in this jurisdiction, nor does it seem to us founded on reason. The court has, of course, no power to compel the successful party to accept its suggestion to remit, but, if he does, we fail to see wherein the unsuccessful party is injured. If it is error, it is in his favor, and he certainly has no right to complain. He is not prejudiced either as to his rights or remedies. The successful party has a right to remit if he desires, without any suggestion from the court. If errors were committed during the trial, they still remain for review by the appellate court the same as if judgment had been entered upon the verdict as rendered. That there was no error in the action of the court in this case of which defendant may complain, see Hayne on New Trial and Appeal, § 166, and *Gregg v. R. R. Co.*, 59 Cal. 312.

The defendant also assigns error upon the ground that the court improperly struck out certain testimony of the defendant as to his reasons for deeming the security unsafe, and

for his taking possession of the property. The testimony of defendant on this point was as follows :

" Q. You may state what reason you had for taking possession.

" A. From what Mr. Murphy told me when he came down here.

" Q. State if you had any other reason.

" A. Mr. Hawes had left there, was going to leave the country and leave the stuff."

Plaintiff objects unless the witness knows this of his own knowledge.

" A. Only by being told is all the way I know."

Plaintiff moved to strike out the answer last given, and the motion was sustained by the court. It is of this defendant complains. If there was error in this, it was without prejudice, because subsequently the witness testified, without objection, to the facts that were attempted to be reached by this question and answer, namely, that the property was on the ranch and apparently not being cared for; no appearance of any person being around; the horses shut up, etc,—all facts tending to show that the defendant had left the country and abandoned the property. There was also other evidence admitted without objection, tending to show what the defendant had been informed in reference to the plaintiff leaving.

Defendant also complains because the plaintiff was allowed to testify as to the value of the property taken, without having first qualified himself to testify as a witness in reference to the market value of the various articles. It may be well questioned whether the rigid rule contended for by defendant prevails in suits of this character where the property involved is household goods and other chattels which the party testifying has himself purchased, owns and has used. Such evidence would appear to come clearly within the rule as to competency laid down by this court. *Railway Co. v. Williams*, 3 Colo. App. 527.

However this may be, the answer of defendant obviates

the necessity of its discussion. In this defendant admits the taking of property which he sold for $299, which was more than the amount of the judgment recovered by plaintiff.

The above embrace all of the alleged errors upon which defendant chiefly relied in his argument for reversal, and are all that we deem it necessary to consider or discuss. Not being able to discover any material error, the judgment will be affirmed.

*Affirmed.*