## AVERILL MACHINERY CO., Appellant, *v.* FREEBURY BROS. et al., Respondents.

(No. 4,352.)

(Submitted April 18, 1921. Decided May 4, 1921.)

[198 Pac. 130.]

*Claim and Delivery—Chattel Mortgages—Possession—Personal Taxes—Collection—Assessment to "Unknown Owners"— Duty of Owner—Statutes—Constitution.*

Claim and Delivery—Chattel Mortgages—Possession.

1. Where, under a provision in a chattel mortgage, the mortgagee was entitled to possession of the property on default of the mortgagor, it still retained its rights as such even though the foreclosure sale at which it bought in the property was so irregular as to be void and passed no title to it, and could properly maintain an action in claim and delivery against defendants, whose claim of ownership was based upon a tax title.

Same—Possession—Burden of Proof.

2. In claim and delivery, the burden was upon plaintiff to prove that it was entitled to the possession of the property at the time of the commencement of the action, having done which, the burden shifted to defendants to prove a superior claim.

Personal Taxes — Collection — Constitution—Statutes — Defective Title — Cured by Adoption of Codes.

3. Section 2684, Revised Codes, relating to the collection of taxes on personal property, *held* not open to the objection that it is unconstitutional on the ground that the title of Chapter 119, Laws of 1903, amending, among others, section 3941, Codes of 1895, now section 2684, does not enumerate section 3941 as among those amended, such objection having been removed by the adoption of the Revised Codes of 1907.

Same—Delinquent Taxes—Tax Title—Assessment to "Unknown Owners" —Duty of Owner.

4. The owner of personal property (a traction engine) which had been left standing on open ground near a town for more than a year, apparently not in the care or custody of anyone, and bearing the impress of abandoned property, was in no position to complain that it had been assessed to "unknown owners" and sold for delinquent taxes, where it had done nothing in the way of notifying the assessor that it was his property nor made an effort to pay or offer to pay the taxes.

Same—Sale of Highest Bid to Another—Effect.

5. Where at a sale of personal property for delinquent taxes the highest bidder sold his bid to another to whom the bill of sale was issued, the owner of the property was divested of title, in the absence of collusion, as effectually as if the bill had been issued to the highest bidder.

---

3. Construction of constitutional provisions relative to titles of statutes, see notes in 1 Ann. Cas. 584; Ann. Cas. 1915A, 79.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by the A. H. Averill Machinery Company against Freebury Bros. *et al.* From a judgment for defendants, plaintiff appeals. Affirmed.

*Mr. F. A. Ewald,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Norris & Hurd* and *Mr. W. E. Arnot,* for Respondent, submitted a brief; *Mr. Arnot* argued the cause orally.

MR. CHIEF COMMISSIONER POORMAN prepared the opinion for the court.

This is an appeal by plaintiff from a judgment rendered against it by the court, sitting without a jury, in a claim and delivery action. The property in dispute is described in the complaint as "One thirty-two (32) horse double Minneapolis traction engine, No. 9060, and all of the parts and fixtures attached thereto, a part thereof, or in any wise thereto belonging." All of the defendants except John Doe, who does not appear, unite in an answer admitting that plaintiff is an Oregon corporation, engaged in the sale of traction engines and other farming machinery and implements; admit the copartnership alleged to exist between Arthur Freebury and Harry Freebury, and deny generally and specifically all other allegations of the complaint. At the close of plaintiff's evidence, the defendants moved "for judgment dismissing this action and a finding by the court in behalf of the defendants, *etc.*" This motion was sustained as to the defendant W. S. Arnot and the trial proceeded as to the other answering defendants. The cause having been finally submitted, the court subsequently rendered its judgment against the plaintiff and in favor of all of the answering defendants, to the effect that plaintiff take nothing and that defendants recover their costs.

It appears from the evidence that appellant was the owner of a chattel mortgage on the property in question, and default having been made in some of the conditions thereof, the sheriff of Teton county, Montana, at the instance of appellant, and under and by virtue of a power of sale contained in the mortgage, took the engine from the possession of the mortgagor, at his ranch in said county, and moved the same several miles to a place a short distance west of the city of Conrad, in said county, and after notice given, sold the same on October 16, 1914, at public auction, the appellant becoming the purchaser at such sale. This mortgage and the purchase of the property at the foreclosure sale constitute appellant's sole claim to ownership and right of possession of the property in question. The respondents claim the property by reason of purchase of the same at a sale thereof on September 29, 1916, by the county treasurer of said county, for delinquent taxes alleged to be due on assessment made in the year 1916. This tax sale is the sole source of respondents' claim to ownership and right of possession.

The engine referred to in the mortgage is described therein as "One thirty-two (32) horse double Minneapolis traction engine, No. 9060, and all of the parts and fixtures attached thereto, a part thereof, or in anywise thereto belonging." In the foreclosure proceedings the engine is referred to as No. 960; in the bill of sale issued by the county treasurer the engine is referred to as bearing the number 6090. Each party maintains that his adversary committed a fatal error in the use of the wrong number. The number is not the only means of identifying the property, nor the only description given. Furthermore, it is the Fitzpatrick engine moved by the sheriff in 1914 to the place where it was found by the assessor in 1915 and 1916, sold by the county treasurer in 1916, taken possession of by the respondents, and was in their possession at the time this action was commenced, and for aught this record shows, all these numbers may have appeared on this engine, or on some of the parts thereof. No

one was deceived by the use of these various numbers, and there is not any doubt of the identity of this particular piece of property.

Much discussion is had in the briefs relative to the [1] regularity of the mortgage sale. The mortgagee was the purchaser at the foreclosure sale and possession was delivered to it. The respondents' sole claim of right is by virtue of an alleged superior title emanating from an entirely independent source. Hence, if the foreclosure sale was so irregular as to render it void, the appellant, as to these respondents, still retained the rights of a mortgagee in possession of the property, under a provision in the mortgage which gave it the right to that possession, and that is sufficient, so far as this case is concerned. (*Reynolds* v. *Fitzpatrick*, 23 Mont. 52, 57 Pac. 452; *Henry Jennings & Sons* v. *Weinberger*, 75 Or. 556, 146 Pac. 1087; *Park* v. *Parsons*, 10 Utah, 330, 37 Pac. 570; 11 C. J. 718, note 90.)

It is true that the burden was upon the appellant to [2] prove that it was entitled to the possession of the property at the time of the commencement of the action (*Woods* v. *Latta*, 35 Mont. 9, 88 Pac. 402), but having done this, the burden was upon the respondents to prove a superior claim.

If the tax title is valid, then the claim of the respondents is superior to any other claim or title having its origin prior thereto. If the tax title is invalid, then the respondents have no standing in this cause.

Appellant attacks the constitutionality of section 2684, [3] Revised Codes, for the reason that section 3941 of the Codes of 1895 is not enumerated in the title of the amendatory Act. (Chap. 119, Laws 1903.) But this question has been decided adversely to the contention of the plaintiff by the adoption of the Revised Codes of 1907 (*Wheeler & Motter Mercantile Co.* v. *Moon*, 49 Mont. 307, 141 Pac. 665), and the section has since been referred to by the supreme court as a part of the law of this state. (*City of Butte* v. *Bennetts*, 51 Mont. 27, Ann. Cas. 1918C, 1019, 149 Pac. 92.)   Sec-

tion 2657, Revised Codes, relating to the same subject, is entirely superseded by the provisions of section 2683 and section 2684. (*State* v. *Bradshaw*, 53 Mont. 96, 161 Pac. 710.)

Some statements are made relative to the constitutionality of section 2517, Revised Codes, which provides that personal property may be assessed to "unknown owners" when the name of the owner is unknown, but appellant seems to base his argument on his claim that it would be an invasion of appellant's constitutional rights to apply that section to the facts in this case.

It is the duty of the assessor to "ascertain the names of all [4] taxable inhabitants and all property in his county subject to taxation" (sec. 2510, Rev. Codes), and when the ownership is unknown, it must be assessed to "unknown owners." (*Id.*, sec. 2517.) This property was assessed to appellant in 1915. Appellant was notified at its office in Cascade county and paid the taxes. The engine remained in the same place,—that is, in open territory west of Conrad,— and was "found" there by the assessor in 1916, and assessed to "unknown owners," after he had "asked a great many people in Conrad as to who the owner of this Minneapolis engine in 1916 was." And the names of some of the parties of whom inquiry was made are given. This inquiry seems to have been somewhat extended. The assessor did not make inquiry of implement dealers, nor correspond with the manufacturer, nor refer to the previous assessment list. The owner of real estate may usually be ascertained by examining the record, but not of personal property. As to the assessor, his knowledge of the ownership of personal property must rest in memory or in evidence. If given the name, he may ascertain what property was assessed in that name, but if given the property, he has no means of finding the name except by an examination of the entire assessment for the year, and then there may be duplicates.

The appellant was in the business of selling this kind of property. One of its witnesses, Mr. Morris, testified that he

had the engine sold once, but could not recall the date. The engine was apparently not in the care or custody of anyone and had not been for more than a year. It bore the impress more of abandoned property than of owned property. The appellant knew this property was subject to assessment and taxation; knew that it did not own real estate in that county; knew that the treasurer might seize and sell the property for taxes. It might have notified the assessor of this ownership; it might have paid the taxes; but it did nothing; until on February 20, 1917, when possession was demanded. No offer was made to pay any taxes. Some duty rests on the property owner. (*Larson* v. *Peppard*, 38 Mont. 128, 129 Am. St. Rep. 630, 16 Ann. Cas. 800, 99 Pac. 136.)

It seems quite clear that from the facts in this case there was a reasonable doubt as to the ownership of this property, and that the assessor used reasonable diligence in endeavoring to ascertain the name of the owner. It is entirely idle to say that property, whose ownership is unknown, or if the owner is known, cannot be found for the purpose of serving notice, is for that reason rendered exempt, or rather immune, from taxation. "Assessments under statutes such as these are intended to be effectual against the property, regardless of the owner, placing it in this respect upon the footing of a proceeding *in rem.*" (*O'Grady* v. *Barnhisel*, 23 Cal. 287, 293.) In this connection, we also refer to *Birney* v. *Warren*, 28 Mont. 64, 72 Pac. 293.

Appellant further complains that at the tax sale W. S. Arnot was the highest bidder and that a bill of sale was [5] made to A. J. Freebury. It appears from the record that Mr. Arnot was the highest bidder and that Mr. Freebury gave him five dollars for his bid, and he thereupon requested the bill of sale be issued to Mr. Freebury. But, had it been issued to Mr. Arnot, it would have divested the appellant of all title (sec. 2661, Rev. Codes), and it could not do more than that if issued to Mr. Freebury. Nor is there any evidence in this case to sustain any charge of collusion. The

value of the property is variously estimated, all the way from $75 to $1,200.

No reversible error appearing in this case, we recommend that judgment be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment is affirmed.

*Affirmed.*