JAMES ET AL., RESPONDENTS, v. SPEER, APPELLANT.

(No. 5,307.)

(Submitted November 1, 1923.   Decided November 22, 1923.)

[220 Pac. 535.]

*Conversion—Mortgaged Chattels—Insecurity Clause in Mortgage—Arbitrary Taking Possession by Mortgagee—Measure of Damages—Foreclosure Sale—Deficiency—Counterclaims—Excessive Verdict—New Trial.*

Conversion by Mortgagee Under Insecurity Clause—Absence of Good Faith or Probable Cause.

1.   A mortgagee who takes possession of personal property before default of the mortgagor under a clause in the mortgage authorizing him to do so whenever he deemed himself insecure may not exercise that right arbitrarily but only in good faith and upon reasonable grounds, and where his conduct in taking the property is arbitrary and unreasonable the mortgagor may bring action in conversion.

---

1.   Effect of unlawful seizure of property by mortgagee assuming to act under chattel mortgage, see note in L. R. A. 1915E, 193.

Danger, safety or insecurity clause in chattel mortgage, see notes in 51 Am. Rep. 805; Ann. Cas. 1914B, 1097; 17 L. R. A. 209; 23 L. R. A. 780; 19 L. R. A. (n. s.) 915.

[69 Mont. 100.]

Same—Evidence—"Value" Means Market Value.

    2. Where a witness testifies to the "value" or "reasonable value" of chattels, he is to be understood as meaning their market value unless a different basis of value is fixed by him.

Same—Measure of Damages—Set-off.

    3. The measure of plaintiff's recovery for the conversion of mortgaged personal property by the mortgagee in arbitrarily and without probable cause taking possession thereof under an insecurity clause in the mortgage before default by the mortgagor is their value less the amount of their mortgage debt, and refusal of an instruction to that effect was reversible error.

Same—Premature Foreclosure—Purchase and Retention by Mortgagee—Effect on Rights and Liabilities of Parties.

    4. Where a foreclosure sale of personal property was void because the note secured by the mortgage which gave the mortgagee the right to take possession when he deemed himself insecure was not then due, but the mortgagee himself became the purchaser and retained possession until after maturity of the debt and then proceeded to foreclose anew, the rights and liabilities of the parties were not affected by the premature foreclosure.

Same—Foreclosure Sale—Deficiency—Counterclaim.

    5. In an action by the mortgagor of personal property against the mortgagee for its conversion, the balance (deficiency) due on the note secured by the mortgage after sale at foreclosure was a proper subject of counterclaim.

Same—Excessive Verdict—New Trial.

    6. Where the only evidence on the issue of the value of property alleged to have been converted was that of plaintiff to the effect that it was worth $918, and the jury were instructed that interest not having been asked none could be allowed and that they could not award exemplary damages, a verdict for $1,015 *held* so excessive as to show that the jury were influenced by passion and prejudice in rendering it, necessitating a new trial.

*Appeal from District Court, Silver Bow County; Wm. E. Carroll, Judge.*

ACTION by Annie James and another against W. O. Speer. Judgment for plaintiffs and defendant appeals. Reversed and remanded.

*Mr. Timothy Nolan* and *Mr. Harlow Pease,* for Appellant, submitted a brief; *Mr. Pease* argued the cause orally.

Numerous and respectable authorities hold that an "insecurity" clause gives the mortgagee an absolute right, for his own protection, to take possession of the mortgaged

---

    6. Excessive damages as ground for reversal, see note in 26 L. R. A. 391, 398.

chattels at any time.  Others hold that if it be made to appear that the mortgagee did not act in good faith upon some appearance of insecurity, he may be charged with conversion.  The former rule, giving an absolute right to take possession, is the only logical result which can be reached, and is supported by the greater weight of authority.  (*Huebner* v. *Koebke,* 42 Wis. 319; *Robinson* v. *Gray,* 90 Iowa, 699, 23 L. R. A. 780, 57 N. W. 614; *Werner* v. *Bergman,* 28 Kan. 60, 42 Am. Rep. 152; *Hill* v. *Merriman,* 72 Wis. 483, 40 N. W. 399; *Allen* v. *Vose,* 34 Hun (N. Y.), 57; *Braley* v. *Byrnes,* 21 Minn. 483; *Francisco* v. *Ryan,* 54 Ohio St. 307, 56 Am. St. Rep. 711, 43 N. E. 1045; *Thorp* v. *Fleming,* 78 Kan. 237, 130 Am. St. Rep. 366, 19 L. R .A. (n. s.) 915, 96 Pac. 470; *Evans* v. *Graham,* 50 Wis. 450, 7 N. W. 380; *Richardson* v. *Coffman,* 87 Iowa, 121, 54 N. W. 356; *Lemaster* v. *Fisher,* 82 Kan. 280, 108 Pac. 93; *Huggans* v. *Fryer,* 1 Lans. (N. Y.) 276; *Chadwick* v. *Lamb,* 29 Barb. (N. Y.) 518; *Hall* v. *Sampson,* 19 How. Pr. (N. Y.) 481; *Farrell* v. *Hildreth,* 38 Barb. 178.)

The measure of damages in conversion by mortgagee of mortgaged property is the difference between the value of the property and the mortgage debt, not the gross value of the property.  (*Berg* v. *Olson,* 88 Minn. 392, 93 N. W. 309; *Hoover* v. *Brookshier,* 32 Okl. 298, 122 Pac. 171; *Belden* v. *Perkins,* 78 Ill. 449; *Burton* v. *Randall,* 4 Kan. App. 593, 46 Pac. 326; *Richter* v. *Buchanan,* 48 Wash. 32, 92 Pac. 782; *Bryan* v. *Baldwin,* 52 N. Y. 232; *First Nat. Bank* v. *Boyce,* 78 Ky. 42, 39 Am. Rep. 198; *Russell* v. *Butterfield,* 21 Wend. (N. Y.) 300; *Brierly* v. *Kendall,* 17 Q. B. 937; *Brown* v. *Phillips,* 3 Bush (Ky.), 656; *Brink* v. *Freoff,* 40 Mich. 610, 44 Mich. 69, 6 N. W. 94.)

*Mr. H. J. Freebourne* and *Mr. T. E. Downey,* for Respondent, submitted a brief; *Mr. Freebourne* argued the cause orally.

The mortgagee of personal property, taking possession under the so-called "insecurity clause," must act in good faith in taking the property, and must not be actuated by malice.

[69 Mont. 100.]

(*Oppenheimer* v. *Moore,* 107 App. Div. 301, 95 N. Y. Supp. 138; *First Nat. Bank* v. *Teat,* 4 Okl. 454, 46 Pac. 474; *Brook* v. *Bayless,* 6 Okl. 568, 52 Pac. 738; *Sills* v. *Hawes,* 14 Colo. App. 157, 59 Pac. 422; *Hyer* v. *Sutton,* 12 N. Y. Supp. 378.) "Where the mortgagee disposes of the property mortgaged without complying with the requirements of law or the provisions of the mortgage, he is guilty of conversion." (*Trudell* v. *Hingham State Bank,* 62 Mont. 557, 205 Pac. 667; *Advance Thresher Co.* v. *Doak,* 36 Okl. 532, 129 Pac. 737; *National Bank of Commerce* v. *Jackson* (Okl.), 170 Pac. 474; *Marchand* v. *Ronaghan,* 9 Idaho, 95, 72 Pac. 731; *Richter* v. *Buchanan,* 48 Wash. 32, 92 Pac. 782; *Burton* v. *Randall,* 4 Kan. App. 593, 46 Pac. 326; *Kellogg* v. *Malick,* 125 Wis. 239, 4 Ann. Cas. 893, 103 N. W. 1120; *Jankowitz* v. *Kaplan,* 138 Minn. 452, 165 N. W. 275; *Anderson* v. *Joseph,* 95 Ark. 573, 130 S. W. 165; *Hoover* v. *Brookshier,* 32 Okl. 298, 122 Pac. 171; *Steidl* v. *Aitken,* 30 N. D. 281, L. R. A. 1915E, 192, 196, 152 N. W. 276.)

MR. JUSTICE STARK delivered the opinion of the court.

On the twenty-fourth day of December, 1921, the plaintiffs made, executed and delivered to the defendant their promissory note for the sum of $310.50, payable six months after date, with interest at ten per cent per annum, and to secure payment thereof likewise executed and delivered to the defendant a chattel mortgage covering one counter, one meat-block, one meat-rack, one ice-box, one Toledo scale No. 581–BN–Gold 299145, fifteen trays, two meat saws, one cleaver, two knives, one rake, window-shades, two light shades, light globes, one sharpening steel, one stove, meat and awning, comprising the fixtures and furniture of a meat-shop situated at 407 South Main Street, in the city of Butte. This mortgage is in the usual form and contains the following clause: "Or if the said mortgagee shall at any time consider the possession of said property, or any part thereof, essential to the security of the payment of said promissory note,  &#42;  &#42;  &#42;

then   *   *   *   the said mortgagee   *   *   *   shall have the right to immediate possession of said described property and the whole or any part thereof.   *   *   .*   ''

On March 4, 1922, defendant, assuming to act under the above provisions of the mortgage, took possession of the property described therein, posted notices of sale on foreclosure, and on March 20, 1922, being the date specified in the notices, the property was offered for sale and was bid in by the defendant, but for reasons hereafter shown this sale was a nullity and did not affect the rights and liabilities of the parties to this suit.

On April 10, 1922, the plaintiffs commenced this action alleging that they were the owners and entitled to the possession of the above property at the time defendant took possession of the same; that defendant in taking possession of the property and selling the same was without right or authority so to do and thereby converted the same to his own use. It is alleged that the value of the property at the time the defendant took possssion of and sold it was $1,015, for which amount plaintiffs asked judgment.

To this complaint the defendant filed an answer on May 16, 1922, in which the allegations of the complaint were denied and the value of the property was alleged to be only $400. For an affirmative defense the answer set out the giving of the note and mortgage as alleged by the plaintiffs, and sought to justify the taking of the same under the above-quoted clause of the mortgage; paragraphs II and III of the answer being as follows:

''II. On and prior to March 13, 1922, the meat market upon the chattels of which the said mortgage was given was being conducted improvidently and was in failing circumstances, which facts became known to the defendant, by reason whereof the defendant did then consider the possession of said property and the whole thereof essential to the security of the payment of said promissory note.

"III. On or about March 13, 1922, the defendant had reason to believe and consider, and did believe and consider, that the possession by him of the whole of the personal property covered by said mortgage was necessary and essential to the security of the payment of said promissory note."

It is then alleged that by reason of these facts the defendant on or about March ——, 1922, by virtue of the power conferred on him by the chattel mortgage, took possession of all of the property described therein and, after giving notice in accordance with law, sold the same as heretofore set forth and filed return of such sale in the office of the clerk of Silver Bow county.

Thereafter, on August 26, 1922, the defendant° filed an amended and supplemental answer and counterclaim containing the same allegations as the original answer in reference to the execution of the note and mortgage and seizure of the property, but alleging that he retained possession of the property until August 8, 1922, when he advertised it for sale, and on August 14, 1922, sold the same for the sum of $300, defendant himself becoming the purchaser; that the amount then due upon the note, together with the costs of foreclosure, was $397.42, and, after applying the amount realized from the sale thereon there was still due to the defendant from the plaintiffs the sum of $97.42, for which amount he asked judgment against them.

The plaintiffs' reply admitted the execution of the note and mortgage as set forth in the amended answer and counterclaim, but denied all of the other allegations.

The cause was tried before the court with a jury, and resulted in a verdict in favor of the plaintiffs for the sum of $1,015, upon which judgment was entered, from which defendant has appealed.

The testimony introduced at the trial was very brief. The plaintiffs called the defendant as a witness and by him proved the original answer, which was thereupon admitted in evidence. The events leading up to the defendant's taking possession of

the property were disclosed in the testimony of the plaintiff Charles H. James, who detailed a conversation between himself and defendant on February 25, 1922, as follows: "He came into the meat market and says, 'I understand that you are closing up the meat market.' I said, 'Not exactly closing; I still have meat and have a few customers.' I had some meat left, and I had some customers left, and that I intended to go to work in the mines until times got better, and I intended to carry on my business again. And he said to me, 'What about taking—don't you think I had better take these scales?' and I said, 'No'; I said, 'I need them at present to weigh out the meat that I have left.' He said, 'You know I can take them if I want to.' I said, 'No; you nor no one else can remove these scales until the mortgage is due, and I fail to make payment.' He said, 'You know as much about law as you do about business'; and I told him that he needn't be throwing assertions that way against me, that some people were trying to down me wasn't as good, or rather any better, if as good, as I am myself. And he raised his cane and said, 'No —— can down my character'; and I said, 'I am not trying to down your character, but you are trying to down mine, which you are doing'; and then he said, 'You know I had no intention of taking the scales when I came in here, but now I will show you that I will,' and started out the door. He was very angry at that time." This witness also gave testimony as to the plaintiffs' ownership of the property, and with reference to the value thereof said: "I had bought other store fixtures. I had spent other money on the equipment in that shop. I knew the reasonable value of the property in that place on March 4, 1922. The reasonable value of the scales on March 4, 1922, was $225. The ice-box on that date was reasonably worth $400. The meat block, rack and counter were reasonably worth on the date $250. The platters were reasonably worth $15. The knife and cleaver were reasonably worth $5. The reasonable value of the awning was $20. The reasonable value of the rake was $1. The reasonable value of the win-

dow-shades was $2." The total value of all the items testified to by this witness is $918, and there was no other evidence of value offered by either plaintiffs or defendant.

The plaintiff Annie James testified that she overheard the latter part of the above conversation between her husband and defendant on February 25; that she saw defendant thump his cane down on the floor and heard him say, "I will show you that I can take it," and that he seemed very angry at the time. The defendant did not deny the conversation. The evidence further showed that at the time this conversation took place, and just prior to the time defendant took possession of the property, plaintiffs were planning to close the meat market until times improved so as to justify reopening it, and that plaintiff C. H. James intended to go to work in the mines during the period of suspension of the business.

1. Defendant's first contention is that the testimony does not [1] show, or tend to show, that he was guilty of a conversion of the mortgaged property when he took possession of the same on March 4, 1922. He claims that the insecurity clause in the mortgage was inserted for his benefit and conferred upon him the right to take possession of the mortgaged chattels at any time he chose to do so by the mere arbitrary assertion that he considered such possession essential to the security of the payment of the note, independently of whether reasonable grounds existed therefor. There are cases in the books which sustain this extreme doctrine, some of which are referred to in defendant's brief. We have examined these cases, and so far as they tend to support this contention they are contrary to the great weight of authority and should not be followed in this jurisdiction.

In 11 C. J. 555, it is said: "Although the ordinary wording of the insecurity clause is that the mortgagor may take possession whenever he 'deems' himself insecure, the prevailing doctrine is that he must act reasonably and have probable cause to apprehend the loss of his claim to justify a taking, for an arbitrary power is not conferred. * * * In determining

whether a mortgagee had reasonable ground to believe that he was in danger of losing his security, any competent relevant evidence may be admitted, and when the evidence is conflicting the question of the mortgagee's good faith and the existence of reasonable grounds for his action are for the jury.''

The rule so announced is supported by the decisions of a large number of cases cited in the notes under this text statement, amongst them being *Sills* v. *Hawes,* 14 Colo. App. 157, 59 Pac. 422, in which we believe the correct doctrine is stated thus: ''The true rule, it seems to us, should be, and is, that the mortgagee has the right to determine for himself whether he is unsafe in his security, subject, however, to the limitation upon this right that his judgment must be exercised in good faith and upon reasonable grounds or probable cause. We do not go to the extent of saying that he must prove there was actual danger, but we think he should be required to show that there was apparent danger, or that he had good reason to believe there was such ground for such belief that a reasonable man might in good faith act upon.''

When a mortgagee takes possession of the mortgaged chattels, without the mortgagor's consent, before he is entitled to do so under the terms of the mortgage, the mortgagor may at once maintain an action to recover possession of the property, or may sue for its value. (*Trudell* v. *Hingham State Bank,* 62 Mont. 557, 205 Pac. 667; *Brashier* v. *Tolleth,* 31 Neb. 622, 48 N. W. 398; *Hawver* v. *Bell,* 141 N. Y. 140, 36 N. E. 6; *Slingo* v. *Steele-Wedeles Co.,* 82 Ill. App. 139.)

Looking at the evidence in reference to defendant's taking possession of this property in the light most favorable to him, the best that can be said of it is that there was a conflict as to whether his acts were reasonable and justifiable or so arbitrary and unreasonable as to amount to a conversion. The case was properly submitted to the jury on that issue.

2. Defendant also contends that the court erred in overrul-
[2] ing a motion made by him to strike out all the testimony of the plaintiff James above quoted, as to the reasonable value

of the property in question at the date of the alleged conversion, because there had been no showing that it had no market value, and that, in the absence of such a showing, evidence of its reasonable value was not admissible. The court committed no error in this respect. While the witness used the words "reasonable value" instead of "reasonable market value," that was a matter of no concern—in the connection where used one was synonymous with the other.

When applied to property, and no qualification is expressed or implied, "value" means the price which the property could command in the market. (*In re McGhee's Estate,* 105 Iowa, 9, 74 N. W. 695; *Fox* v. *Phelps,* 17 Wend. (N. Y.) 393; *Missouri, K. & T. Ry. Co.* v. *Crews,* 54 Tex. Civ. App. 548, 120 S. W. 1110.)

"By 'value,' in common parlance, is meant 'market value,' which is no other than the fair value of property as between one desiring to purchase and another desiring to sell, and the words 'value' and 'market value' are often used interchangeably, and both as being the equivalent of 'actual value' and 'salable value.'" (*Hetland* v. *Bilstad,* 140 Iowa, 411, 118 N. W. 422.)

"When [a witness] speaks generally of values of chattels, it means their value in the market. This is inferred, unless a different basis of value is fixed by the witness, or it is apparent that the witness bases his value on a different foundation." (*Filson* v. *Territory,* 11 Okl. 351, 67 Pac. 473; *Coyle* v. *Baum,* 3 Okl. 695, 718, 41 Pac. 389.)

3. Defendant requested the court to instruct the jury to the effect that if they found for plaintiffs on the question of [3] conversion, in awarding damages they should set off against the value of the property converted the amount due upon plaintiffs' note to defendant which had been secured by the mortgage thereon. Such requested instruction was refused and the jury was not advised by the court in any manner of the defendant's rights in that behalf. The instruction should have been given, because the plaintiffs were only entitled to

recover the value of their interest in the property; that is, its value less the amount of the mortgage debt. (*Burton* v. *Randall,* 4 Kan. App. 593, 46 Pac. 326; *National Bank of Commerce* v. *Jackson* (Okl.), 170 Pac. 474; 2 Cobbey on Chattel Mortgages, sec. 1036.) The refusal by the court to give this instruction deprived the defendant of substantial rights, was highly prejudicial, and requires a reversal of the judgment.

4. The attempted foreclosure sale on March 20, 1922, was [4] a nullity, because the note secured by the mortgage was not then due; but, since the defendant himself became the purchaser and retained possession of the property, the rights and liabilities of the parties were not affected thereby. (*Brown* v. *Maynard,* 107 Mich. 401, 65 N. W. 293; *Powell* v. *Gagnon,* 52 Minn. 232, 53 N. W. 1148; *Averill Machine Co.* v. *Freebury Bros.,* 59 Mont. 594, 198 Pac. 130.) So that, if the defendant's original taking of the property on March 4 was justified, he had a right to retain its possession until after the maturity of the debt and then proceed to a foreclosure. This was the procedure which he followed. After applying the proceeds of the sale of August 14 to the amount of the note there remained due to the defendant from the plaintiff the sum of $97.42, which constituted the counterclaim set up in the answer. The court refused to submit this counterclaim to the jury.

Since the cause must go back for a new trial, we point out [5] that if the jury should find in favor of the defendant on the issue of conversion, he would be entitled to recover from plaintiffs the balance due on the note, and that this is a proper matter for counterclaim which should be submitted to the jury under appropriate instructions. (*Kinsman* v. *Stanhope,* 50 Mont. 41, L. R. A. 1916C, 443, 144 Pac. 1083.)

5. The defendant urged that the verdict of the jury for [6] $1,015 is excessive, and shows that it was rendered under the influence of passion and prejudice because the evidence discloses that the value of the property of which defendant took possession was only $918—the testimony gave that as the maximum value of the property.

That the verdict should not have exceeded that amount is apparent. If the jury had been properly instructed, the amount of the mortgage debt should have been deducted therefrom. The court instructed the jury that the actual damage caused by the wrongful conversion of personal property is presumed to be the value of the property at the time of the conversion, with interest from that time, but that, since the plaintiffs had not claimed interest in the complaint, none could be allowed in the verdict, if they found for the plaintiffs, and also instructed that they could not allow any sum as exemplary or punitive damages.

The result reached by the jury cannot be accounted for by computation from any evidence in the case, but can be accounted for only on the ground that the jury was influenced by passion and prejudice against the defendant.

For the errors above pointed out, the judgment is reversed and the cause remanded to the district court, with instructions to grant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.