JUSTICE McKINNON,
dissenting.
¶40 First and foremost, it is undisputed that Gunnersfield received actual notice of the tax sale proceedings when it was identified as a potentially interested party in the title report required by § 15-18-212(4), MCA. Zinvest filed and mailed a notice to Gunnersfield that a tax deed may be issued, dated June 17, 2013. Zinvest secured a tax deed, filed a quiet title action, and received a Disclaimer of Interest in Lot 6A from Gunnersfield. It was not until Zinvest listed the property for sale, eight months later, that Gunnersfield realized its mistake. This Court’s decision, therefore, overturns a tax deed sale in which the taxpayer admits to receiving notice of a tax lien, but then failed to investigate; failed to act; and, ultimately, failed to timely discharge the tax lien. “The law helps the vigilant before those who sleep on their rights,” § 1-3-218, MCA, and Montana’s statutory taxation scheme is premised upon notice, process, and the near universal recognition that every property is liable to a tax. While “[t]he purpose behind the tax lien sales statutes is to protect property owners and their rights to due process,” Zinvest, LLC, ¶ 20, the process is abused when the statutes are strictly complied with but an exception is nonetheless made to enforcement. Zinvest and the County Treasurer complied with all statutory requirements for Zinvest’s purchase of Lot 6A by tax sale. Thus, where there has been strict adherence to the statutory scheme, as here, any concerns of due process and notice to the taxpayer regarding the necessity for discharging an admittedly owing lien are unwarranted. Taxation and the sale of property for unpaid taxes could never be effectively administered if we were to assess the merits of each property owner’s individual inquiries regarding whether he or she owed taxes. “All proceedings in the nature of assessing property for purposes of taxation and in levying and collecting taxes thereon are in invitum and must be stricti juris.” Perham v. Putnam, 82 Mont. 349, 358, 267 P. 305, 309 (1928). Tax sales must be conducted in compliance with the taxation statutes or they are void. Conversely, “no presumption can be raised to supply defects in the proceedings for the sale[]” if there was strict statutory compliance. Perham, 82 Mont. at 358, 267 P. at 309.
¶41 I am also concerned with the Court’s analysis regarding identification of the owner for purposes of assessment. The Court misconstrues § 15-8-201(4), MCA, by omitting any consideration of “supposed owner” and compounds the error by concluding that the property was not “properly assessed” for purposes of §15-17-325, MCA, a statute generally providing that a sale is not to be voided by a *349 misnomer of ownership. The Court’s analysis is flawed through its failure to grasp a long-recognized statutory distinction, and one similarly recognized in our case law, between assessments of taxes on real property and assessments of taxes on personal property. Failure to appreciate this distinction leads to our unprecedented action of “implicitly” overruling, and in some instances expressly overruling, nearly a century of jurisprudence relying on and correctly interpreting this distinction. Opinion, ¶¶ 33-35, 34 n.3. In my opinion, this Court’s decision to jettison over a century of precedent is both hasty and ill-advised.
¶42 Montana has long recognized a distinction between the assessment of property and taxation of property. In Hilger, 56 Mont. at 165-66, 182 P. at 480, we said:
When our Constitution was prepared and ratified, the term “assessment” and the term “taxation” each had a definite, well-understood meaning. Assessment was the process by which persons subject to taxation were listed, their property described, and its value ascertained and stated. Taxation consisted in determining the rate of the levy and imposing it.... This has been the history of our revenue legislation from the time Montana was organized as a territory, and the framers of our Constitution understood these words and used them accordingly.
Although the Court acknowledges this distinction by stating that “assessment is entirely the responsibility of the Department” and “I Collection and enforcement are the responsibility of County Treasurers,” Opinion, ¶ 17, the Court ultimately fails to appreciate the significance of the distinction when it invalidates a tax sale (taxation) based upon its conclusion that the Department erred by incorrectly identifying the owner of real property (assessment). The Court first errs in concluding that the real property was not properly assessed pursuant to § 15-8-201(4), MCA. The Court next errs by assigning the purported error of the assessment to the County Treasurer’s tax sale.
¶43 To begin, the Department, pursuant to § 15-8-201(2)(a), MCA, is required to assess property to “the person by whom it was owned or claimed ....” However, with respect to real property, “[a] mistake in the name of the owner or supposed owner of real property does not invalidate the assessment.” Section 15-8-201(4), MCA (emphasis supplied). Section 15-8-201(4), MCA, is the first misnomer statute applicable to these proceedings and addresses identification of the owner for the purpose of assessment. The Court’s first mistake is that it interprets § 15-8-201(4), MCA, as being “specific [only] to a mistake in the name of the owner rather than to a mistake in the identity of the *350 owner,” and concludes that “[t]he statute says nothing about assessing the property to the wrong person or entity entirely.” Opinion, ¶ 23. To the contrary, while such an interpretation perhaps is consistent with assessments for personal property, the statute specifically provides for other considerations when identifying the owner for purposes of assessing real property. The Court simply does not address the remaining language of § 15-8-201(4), MCA, “supposed owner,” which is likely that subsection’s most significant distinction from § 15-8-201(2)(a), MCA, and the other misnomer statute under consideration, § 15-17-325, MCA. Significantly, the distinction amounts to this: a mistake in the “supposed owner” of the real property will not invalidate the assessment on real property, while the same is not true for personal property. Clearly, “supposed” means that the property was assessed in one other than the owner. The “supposed” owner is “[plresumed to be [the] true or real [owner] without conclusive evidence”; the “intended” owner; or the “firmly believed” or “expected” owner. The American Heritage Dictionary of the English Language 1751 (Joseph P. Pickett ed., 5th ed. 2011). See also Webster’s Third New International Dictionary, supra, at 2298, defining “supposed” as “believed to be or accepted as such”; Merriam-Webster’s Collegiate Dictionary 1184 (Frederick C. Mish ed., 10th ed. 1997), defining “supposed” as “held as an opinion,” “mistakenly believed,” or “considered probable or certain.” A “supposed owner,” therefore, based on these common usage definitions, would include a person other than the actual owner.
¶44 In Cobban, as the District Court recognized, an action by the treasurer to sell real estate for taxes due was not invalidated because the assessment was in the name of one other than the owner. Cobban, 23 Mont. at 350, 59 P. at 3. Moreover, our decision in Cullen was informed by Cobban when we rejected the argument that an assessment was void because it failed to name all the owners of the property. We determined the question “settled” by statute and “twice announced by this [C]ourt” that “when land is sold as the property of a particular person for taxes which have been correctly imposed upon the land, no misnomer or other mistake relating to ownership thereof affects the sale or renders it void, or voidable [citing Cobban and Birney], such mistake being in the nature of an irregularity or informality only.” Cullen, 47 Mont. at 524-25, 134 P. at 305. Although we recite § 1-2-101, MCA, and our role in interpreting statutes, Opinion, ¶ 25, we fail to address the most relevant and significant distinction between § 15-8-201(2)(a) and -201(4), MCA; that is, we ignore, by failing to give it any effect, the plain language of the statute *351 which provides that a mistake in the name of the “supposed owner” of real property will not invalidate the assessment. Here, the “supposed owner,” Prospero, was a mistake and, as the mistake relates to real property, it will not serve to invalidate the assessment. Had the assessment related to personal property, the same would not have been true.[5]
¶45 The second misnomer statute at issue here is § 15-17-325, MCA. In contrast to the real property distinction of § 15-8-201(4), MCA, § 15-17-325, MCA, applies to the sale of all property, both personal and real property. Section 15-17-325, MCA, provides that once taxes are “properly assessed on the property of a particular person, no misnomer of ownership or other mistake relating to ownership affects the tax lien or renders it void or voidable.” Thus, if the assessment is for property other than real property, it must be assessed to the person by whom it is owned, § 15-8-201(2)(a), MCA. See Birney, 28 Mont. at 68, 72 P. at 294; Vail, 132 Mont. at 214, 315 P.2d at 998. Therefore, misnomers of ownership or other mistakes relating to ownership as set forth in § 15-17-325, MCA, do not raise concerns of due process or notice as the underlying requirement for the property to be assessed to the person by whom it is owned, § 15-8-201(2)(a), MCA, has been satisfied. Conversely, if personal property is not assessed to the owner, then the property has not been “properly assessed” and the provisions of the misnomer statute contained in § 15-17-325, MCA, are not implicated. Importantly, and of critical significance to these proceedings, § 15-8-201(4), MCA, also works in conjunction with § 15-17-325, MCA, applying the misnomer provision that a mistake in the name of a supposed of real property does not render the property “[imjproperly assessed.” The Court’s attempt to find authority for its conclusions by referring to the “modern statutes” is unpersuasive, Opinion, ¶¶ 22, 24. The statutes, applied together consistently, have always required personal property to be assessed in the name of the owner, but the assessment of real property in the name of the supposed owner, through operation of § 15-8-201(4), MCA, nonetheless remains valid. This Court has, for over a century, recognized these statutory distinctions.
¶46 In Vail the dispute was whether Vail held title in fee or clouded by *352 a lien of special assessments for water charges. Vail, 132 Mont. at 207, 315 P.2d at 994. Vail did not concern a tax on real property; Vail had earlier acquired the property by tax deed and argued that the water district was late in collecting its special assessment fees. The Court found that the special assessment must be made to the individual owners and relied on the predecessor to § 15-8-201(2)(a), MCA, that to be a valid assessment it “must assess such property to the persons by whom it was owned.” Vail, 132 Mont. at 214, 315 P.2d at 998. The Court explained that “the charges made by irrigation districts are special assessments not taxes, although they are administered and collected in the same general manner as taxes. It is elementary that this requires assessment to individual owners by individual ownership.” Vail, 132 Mont. at 214, 315 P.2d at 998 (citation omitted). Similarly, in Musselshell County, relied on extensively by the Court, the assessment related to a mining claim. We recognized that the added taxable interest of the mining claim to the real estate “should be separately assessed” from the real property. Musselshell County, 92 Mont. at 210, 11 P.2d at 777. Rather than deciding whether the misnomer statute pertaining to real property also applied to the separate personal property interest of the mining claim, the Court simply modified the judgment to reflect an assessment against the owner of the mining claim. Musselshell County, 92 Mont. at 210-11, 11 P.2d at 777-78. This was also consistent with our subsequent explanation in Rist that “the originator of the royalty is still the owner of the real property to which it relates, and that the assignee’s interest is only in the ‘produce or profit’ therefrom,—namely, in the personal property which the owner is to receive for the granted privilege of producing minerals from his land.” Rist, 117 Mont. at 432, 159 P.2d at 342-43 (emphasis supplied). Accordingly, Musselshell County does not establish that, like personal property, real property must be assessed in the name of the actual owner. The Court in Musselshell County avoided the issue by simply modifying the judgment to reflect that the assessment will run against the true owner of the mining claim, as should an assessment for a personal property interest. This was consistent with the requirement to assess personal property in the name of the actual owner pursuant to § 15-8-201(2)(a), MCA, and does not provide guidance regarding the relationship of the two misnomer statutes at issue here.
¶47 In these proceedings, as in Cobban, both misnomer statutes, §§ 15-8-201(4) and 15-17-325, MCA, must be applied consistently together, without confusing the provisions of § 15-8-201(2)(a), MCA. Pursuant to § 15-8-201(4), MCA, which allows an assessment against a “supposed *353 owner,” the proceedings are against the property itself and are, as the District Court found, in rem. If the proceeding is pursuant to § 15-8-201(2)(a), MCA, it is against personal property, or in personam, and must identify the owner of the property. Our jurisprudence has expressly recognized such a distinction. In Cobban, we stated:
[I]t is plain that the listing of land in the name of a person other than the owner is but an irregularity or informality which, of itself, does not avoid the assessment nor render the tax illegal or unauthorized. The name of the owner of the real property is, for all purposes of taxation except perhaps the imposition of a personal liability, comparatively unimportant.... The listing of lands to the wrong person affords no ground for restraining the collection, by sale of the property itself, of the taxes due thereon.
Cobban, 23 Mont. at 349, 59 P. at 2-3 (internal citations omitted). Similarly, in Meyer we held that “[t]he reason for the statute and the cases holding likewise is that the tax sale is a proceeding in rem against the property itself and not in personam.” Meyer, 132 Mont. at 192, 315 P.2d at 514. Further, in Sutter we explained:
Under our statutes property must be assessed in the name of the owner if known, but if unknown it must be assessed to unknown owners. (Sec. 2009, supra.) A mistake in the name of the owner or supposed owner does not affect the validity of the assessment. (Sec. 2002, Rev. Codes; County of Musselshell v. Morris Development Co., 92 Mont. 201, 11 P.2d 774.) This points to the conclusion that in some respects at least the procedure for taxation of real property and enforcing collection of taxes is in rem and not in personam, and this court has so indicated in State ex rel. Freebourn v. Yellowstone County, 108 Mont. 21, 88 P.2d 6, as well as in Averill Machinery Co. v. Freebury Bros., 59 Mont. 594, 198 P. 130. Defendants assert that the Averill Case recognizes the proceedings as in rem only when the property is actually assessed to an unknown owner. We do not so interpret that case. They also rely upon the cases of Hilger v. Moore, 56 Mont. 146, 182 P. 477, State ex rel. Tillman v. District Court, 101 Mont. 176, 53 P.2d 107, 103 A.L.R. 376, Ford Motor Co. v. Linnane, 102 Mont. 325, 57 P.2d 803, and Christofferson v. Chouteau County, 105 Mont. 577, 74 P.2d 427, as sustaining the view that tax proceedings in Montana are in personam. The opinions in those cases use language pointing to that conclusion. Those cases state that “taxes are levied against the person, not the property”; they do not treat of the precise question here under consideration. While taxes maybe levied against the person, there is no continuing personal *354 obligation on the part of the owner, but the obligation is terminated when the tax lien is foreclosed. (Calkins v. Smith, 106 Mont. 453, 78 P.2d 74.)
We hold that proceedings for the enforcement of a tax obligation when proceedings are against the property, as here, rather than by suit under section 2253, Revised Codes, are in rem. If that were not so, it is doubtful whether taxes could ever be collected against a non-resident owner of property in this state. Proceedings to effect collection of taxes on real property by foreclosure of the tax lien are in rem and not in personam.
Sutter, 110 Mont. at 393-94, 103 P.2d at 305.
¶48 The two misnomer statutes under scrutiny here have existed in our law since 1887. Section 46, an act to provide for the levy of taxes and assessment of property, provided: “When any lands or town lots are offered for sale for any taxes, it shall not be necessary to sell the same as the property of any person or persons; and no sale of any land or town lot for taxes shall be invalid on account of its having been charged on the assessment roll in any other name than that of the rightful owner or charged as unknown ....” In 1891, and thereafter in 1895, similar statutes were enacted making it “plain that the listing of land in the name of a person other than the owner is but an irregularity or informality which, of itself, does not avoid the assessment nor render the tax illegal or unauthorized.” Cobban, 23 Mont. at 349, 59 P. at 2. This Court recognized, as early as 1899, “[t]he name of the owner of the real property is, for all purposes of taxation except perhaps the imposition of a personal liability, comparatively unimportant.” Cobban, 23 Mont. at 349, 59 P. at 2. We drew from the authority of numerous other states in support of such an interpretation: Landregan v. Peppin, 24 P. 859 (Cal. 1890); Haight v. Mayor of N.Y., 1 N.E. 883 (N.Y. 1885); Merrick v. Hutt, 15 Ark. 331 (Ark. 1854); Trust Co. v. Weber, 96 Ill. 346 (Ill. 1880); State v. Matthews, 40 N.J.L. 268 (N.J. 1878); Bradley v. Bouchard, 48 N.W. 208 (Mich. 1891); Hill v. Graham, 40 N.W. 779 (Mich. 1888); Stilz v. City of Indianapolis, 81 Ind. 582 (Ind. 1882); Schrodt v. Deputy, 88 Ind. 90 (Ind. 1882); and Strauch v. Shoemaker, 1 Watts & Serg. 166 (Pa. 1841). Accordingly, it was quite clear that “the listing of lands to the wrong person affords no ground for restraining the collection, by sale of the property itself, of the taxes due thereon....” Cobban, 23 Mont. at 349, 59 P. at 3. We explained that the tax statutes “prohibit courts and judges from enjoining the collection of any tax, and from restraining the sale of the property for nonpayment of any tax, except in those instances where the tax is illegal, or not authorized by law, or where *355 the property is exempt from taxation ....” Cobban, 23 Mont. at 349-50, 59 P. at 3.
¶49 Four years later, in 1903, this Court considered the effect on an assessment of a mistake in the name of the owner of personal property and whether it differed from a mistake in the name of the owner of real property. Birney, 28 Mont. at 64, 72 P. at 293. The Court first examined the statute pertaining to assessment of land, which provided: “[w]hen land is sold for taxes correctly imposed as the property of a particular person, no misnomer of the owner, or supposed owner, or other mistake relating to the ownership thereof, affects the sale, or renders it void or voidable.” Birney, 28 Mont. at 67, 72 P. at 294. Next, the Court applied the rule of interpretation “Expressio unis est exclusion alterius,”[6] reasoning that a mistake in the name of the owner of real property does not invalidate the tax, but that an assessment of personal property to a named person other than the owner is absolutely void. Birney, 28 Mont. at 67, 72 P. at 294. While I do not disagree with the Court’s final evaluation of Birney, that mistakes relating to ownership of personal property are not excused, Opinion, ¶ 27; the significance of Birney for purposes of this proceeding is that the Court reasoned that because the misnomer statute at issue related specifically to real property, the same could not apply to mistakes in the owner of personal property. A mistake in the owner of personal property, accordingly, would invalidate an assessment. Birney simply provides additional support for the long-recognized distinction between mistakes in owners of real and personal property and the corresponding effect on the validity of the assessment.
¶50 In my opinion, the foregoing historical precedent accumulated over the course of a century demonstrates the Court’s error in applying principles of taxation for personal property to the taxation of real property. I dissent from the Court’s decision to depart from this well-reasoned precedent and our failure to recognize a distinction between taxation of real property and that of personal property. I dissent also for the simple reason that Gunnersfield received actual notice that he had failed to pay taxes owing on his real property.

 Section 15-8-501, MCA, to which the Court refers, Opinion, ¶ 18, is not relevant to these proceedings as the owner was neither absent nor unknown. Again, the misnomer provisions of § 15-8-201(4), MCA, pertaining to “supposed owner” directs that a mistake in the name of the real property owner, as here, will not invalidate the assessment.

 Expressio unis est exclusion alterius is a “canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative.” Black’s Law Dictionary 602 (Bryan A. Garner ed., 7th ed. 1999).