## CITY OF MOBERLY, Respondent, v. GEORGE C. DESKIN, Appellant.

Kansas City Court of Appeals, April 7, 1913.

1. **MISDEMEANORS: Gambling Devices.** The defendant was prosecuted and convicted on the charge of permitting a gambling device, commonly called a slot machine to be run on his premises. *Held*, that a contrivance which was intended to allure the player into continuing to play in the hope that next time the indicator would point to trade checks and thus bring him something for nothing, is clearly a gambling device.

2. ———: **Ordinance: Publication.** When a city ordinance is introduced in evidence, and the proof meets the requirements of R. S. 1909, section 6295, in regard to the publication, it is prima facie evidence that the ordinance was duly enacted and published, and the burden is on the defendant to show that the ordinance was not published as provided by law.

3. ————: **Validity of Ordinance: Statute.** When a statute and an ordinance both treat the offense in question as a misdemeanor punishable by imprisonment in the jail or workhouse, or by fine, the fact that the ordinance prescribes not a different kind but a lighter degree of punishment than the statute, does not militate against it's validity.

4. **Definitions: Gaming and Gambling Devices.** In legal significance the terms "gaming device" and "gambling device" are synonymous and include all instruments, implements, devices and means which are made and used in unlawful gaming.

5. ————: **Gaming.** To constitute gaming there must not only be betting upon the determination of an event, but the course of action to bring about such an event must have been arranged and commenced with the view to determine the bet.

Appeal from Randolph Circuit Court.—*Hon. Alexander H. Waller,* Judge.

*M. J. Lilly* for appellant.

*Arthur B. Chamier* for respondent.

JOHNSON, J.—Defendant was prosecuted and acquitted in the police court of Moberly, a city of the third class, on the charge of permitting "a gambling device commonly called a slot machine . . . to be set up and used for the purpose of gaming and gambling and playing games of chance for money and property, in a certain building in said city . . . which said building was then and there occupied and used by and was in the possession of and under the control of and belonged to the said George C. Deskin who did then and there permit divers persons . . . to come together in said building and play for money and property at games of chance with, at and on said gambling device and slot machine contrary to an ordinance in relation to gaming tables, banks and devices set up or used in houses and other premises in the city of Moberly," etc. The ordinance thus charged to have been violated was enacted April 8, 1910, and is as follows:

169 Mo. App.—43

"Be it ordained by the city council of the city of
Moberly, Missouri, as follows:

"Section 1. Every person who shall permit any
gaming table, bank or device to be set up, or used,
within the city, for the purpose of gaming, in any
house, building, shed, booth, shelter, lot or other prem-
ises, to him belonging, or by him occupied, or of
which he hath at the time the possession or control,
shall, upon conviction, be adjudged guilty of a mis-
demeanor and punished by imprisonment in the city
prison not more than three (3) months, nor less than
thirty (30) days, or by a fine not exceeding one hun-
dred dollars ($100), and not less than twenty-five
dollars ($25).

"Section 2. This ordinance shall take effect and
be in force from and after its passage, approval and
publication, and shall repeal and annul any and all
ordinances in conflict with the provisions of this or-
dinance."

A jury was waived in the circuit court where the
cause was taken on the appeal of plaintiff and defend-
ant was adjudged guilty and a fine of $25 and costs
was assessed against him. From this judgment he
appealed to this court.

Defendant objected to the introduction of the or-
dinance in evidence on the ground that plaintiff had
offered no proof of its publication. The documentary
evidence of the ordinance offered by plaintiff con-
sisted of page 284 of a printed book entitled "Re-
vised Ordinances, City of Moberly, 1910," which pur-
ported to have been published by authority of the city
and to contain all of its ordinances, resolutions, rules,
orders and by-laws. Further the book recited that it
was published pursuant to "an ordinance in relation
to revising, printing and publishing the revised or-
dinances of the city of Moberly of 1910," etc. The
court overruled the objection and received the ordi-

nance in evidence. Section 6295, Rev. Stat. 1909, provides:

"Printed copies of the ordinances, resolutions, rules, orders and by-laws of any city or incorporated town in this State, purporting to be published by authority of such city or incorporated town, and manuscript or printed copies of such ordinances, resolutions, rules, orders and by-laws, certified under the hand of the officer having the same in lawful custody, with the seal of such city or town annexed, shall be received as evidence in all courts and places in this State, without further proof; and any printed pamphlet or volume, purporting to be published by authority of any such town or city, and to contain the ordinances, resolutions, rules, orders or by-laws of such town or city, shall be evidence, in all courts and places within this State, of such ordinances, resolutions, rules, orders or by-laws."

We find the proof of the ordinance meets the requirements of this statute and constitutes prima facie evidence that the ordinance was duly enacted and published. Defendant was not precluded from showing that the ordinance had not been published as provided by law but the burden of proving that fact was on him. [City v. Foster, 52 Mo. 1. c. 517; Campbell v. Railway, 175 Mo. 1. c. 176; Town of Canton v. Ligon, 71 Mo. App. 407; McQuillin on Municipal Corp., sec. 391.] Since he offered no evidence attacking the validity of the ordinance on this point we assume that it was regularly enacted and published.

Next it is urged by defendant that the ordinance is void for the reason that it classes as a misdemeanor and punishes with a fine an offense denounced as a felony by the statutes. The argument is based on the erroneous idea that the class of offenses dealt with in the ordinance is the same as that covered by section 4750, Rev. Stat. 1909. The ordinance relates only to offenses that are classed as misdemeanors in sec-

tion 4753, Rev. Stat. 1909, and which are punishable by imprisonment in the county jail or workhouse or "by fine not exceeding five hundred dollars or less than fifty dollars." It is, true the maximum and minimum fines prescribed by the ordinance are $100 and $25 respectively, and that the statutes provide (Sec. 9277, Rev. Stat. 1909) "that such city shall have power, in any case wherein the penalty for an offense is fixed by any statute, to affix the same penalty by ordinance, and no other, for the punishment of such offense" but as is said by the Supreme Court in Ex parte Caldwell, 138 Mo. 1. c. 241, "The 'same penalty' mentioned in the charter evidently means the same kinds of punishment, that is, when the punishment is by fine only, the offender cannot be punished by imprisonment, and visa versa." The statute and ordinance both treat the offense in question as a misdemeanor punishable by imprisonment in the jail or workhouse or by fine and the fact that the ordinance prescribes not a different kind but a lighter degree of punishment than the statute does not militate against its validity.

Finally counsel for defendant argue that the judgment should be reversed on the ground that the slot machine defendant permitted to be set up and operated on his premises was not a gambling device. Defendant maintained the machine and allowed it to be used in a restaurant he owned and operated in the city of Moberly. The machine which, as stated, was called an "Automatic Gum Vender" contained a compartment in which was kept a number of small packages of chewing gum. The quantity and quality of the gum in each package appears to have been much inferior to that usually found in packages sold on the market for five cents each but for the purposes of the present discussion we shall assume that the player who obtained from the machine a package of gum in exchange for five cents received merchandise that

could be sold on the market at retail for that sum. The machine could not be operated unless the player first dropped either a nickel or a metal trade check into a slot and then pulled a lever. These trade checks were of the size and shape of a nickel and each check had the purchasing power of five cents at defendant's counter. The machine had a mechanical device that indicated in advance what the player would receive on the next play. A package of gum was always given for each nickel dropped in the slot and occasionally trade checks of a number ranging from two to twenty were given in addition to a package of gum. The indicator always told the player before he deposited his coin whether he would receive gum only or gum plus a number of five-cent trade checks. The mechanism was so contrived that no gum was given for a trade check deposited in the slot and when the indicator did not point to trade checks the player received nothing for his check but when it pointed to trade checks he would receive the number of checks indicated. Counsel for defendant argues that each operation of the machine was a separate and independent business transaction and since the player was informed in advance of what he would receive in exchange for his nickel or its equivalent, there was no hazard or chance in the transaction and, therefore, an essential ingredient of a wager was lacking and the machine should be regarded as being but an innocent and successful salesman of chewing gum.

In legal significance the term "gaming device" and "gambling device" are synonomous (State v. Mohr, 55 Mo. App. 329) and include all instruments, implements, devices and means which are made and used in unlawful gaming. Thus a pack of cards is held to be a gaming device when employed in gambling (State v. Mohr, supra; State v. Scaags, 33 Mo. 92; State v. Herryford, 19 Mo. 378), though, as is well

known, cards are in general use as a means of recreation and innocent amusement.

Among the definitions of gaming to be found in the books are the following: "A contract between two or more persons by which they agree to play by certain rules at cards, dice, or other contrivance and that one shall be the loser and the other the winner." [Bouvier's Law Dict. 620.] "To constitute gaming there must not only be betting upon the determination of an event, but the course of action to bring about such an event must have been arranged and commenced with the view to determine the bet." [State v. Smith, 19 Tenn. 99; Ansley v. State, 36 Ark. 67.]

"The essence of gaming and wagering is that one party is to win and the other to lose upon a future event, which, at the time of the contract, is of an uncertain nature, that is to say if the event turns out one way A will lose, but if it turns out the other way he will win."

In no field of reprehensible endeavor has the ingenuity of man been more exerted than in the invention of devices to comply with the letter but to do violence to the spirit and thwart the beneficent objects and purposes of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the courts to accomplish no greater result than that of demonstrating the inaccuracy and insufficiency of some of the old definitions of gambling that were made before the advent of the era of greatly expanded, diversified and cunning mechanical inventions.

The chief element of gambling is the chance or uncertainty of the hazard. It is not essential that one of the party to the wager stands to lose. The chance taken by the player may be in winning at all on the throw or in the amount to be won or lost and the transaction should be denounced as gaming whenever

the player hazards his money on the chance that he may receive in return money or property of greater value than that he hazards. If he is offered the uncertain chance of getting something for nothing, the offer is a wager since the operator offers to bet that the player will lose. and in accepting the chance the player bets that he will win. Such offer, therefore, is a direct appeal to the gambling instinct which, it is said possesses every man in some degree, and it is the temptation to gratify the instinct that all penal laws aimed at gambling are designed to suppress. [Lang v. Merwin, 78 Me. 486, 59 Atl. 1021; State v. Willis, 78 Me. 70, 2 Atl. 248; Horner v. U. S., 147 ·U. S. 449.]

We approve the doctrine expressed in the following quotation from the opinion in Lang v. Merwin, supra: ''In the case before us it is idle to assume or concede, that the person putting his five cents into the machine may be doing so merely as a means or mode of buying a five cent cigar. It is idle to deny that the impelling motive is the hope of getting other cigars for nothing. If the machine did not afford that chance it would not be used. True, the cigar dealer sets up the machine to increase his trade and is recouped by that increase for any losses, so that in the end he loses nothing, but he does .so by arousing and stimulating the gambling propensity, the very propensity the Legislature evidently seeks to repress. The element of chance is the soul of the transaction. The operator hopes by chance to get something for nothing. The dealer hopes chance will save him from giving something for nothing. Each is pecuniarily interested adverse to the other in a result to be determined solely by chance. To use the language of the street 'it is a gamble' which will win, and we have no doubt the transaction is 'gambling' in the statutory sense of the word.''

The only important difference between the device

in that case and the one under consideration is that the latter indicated in advance the result of the next play. But that is found on analysis to be a distinction without a substantial difference. It was possible for a player to put a nickel in the slot and obtain from the machine a package of gum worth two or three cents and checks good for merchandise of the value of one dollar. One cannot imagine that a player would stop when the indicator pointed at trade checks, i. e., at a certainty of gain. Consequently, the inventor of the device knew that when each new player began, the indicator invariably would point to gum only, i. e., to no reward for the next play, but he also knew that in the vast majority of instances the dealings between the player and the machine would consist of more than a single play and we hold as unsound the view of defendant that each play constituted a separate and distinct transaction in the sense of ending the relation of the player to the machine, which was designed and intended to include a number of plays. The contrivance was intended to allure the player into continuing to play in the hope that the next time the finger would point to trade checks and thus bring him something for nothing. Clearly the machine was a gambling device.

The judgment is affirmed. All concur.