DUROCHER, APPELLANT, *v.* MYERS, RESPONDENT.

(No. 6,389.)

(Submitted January 16, 1929. Decided February 27, 1929.)

[274 Pac. 1062.]

ACTION by E. L. Durocher against Jake Myers. Judgment for defendant, and plaintiff appeals.

*Mr. Victor R. Griggs,* for Appellant, submitted a brief, and argued the cause orally.

*Messrs. Tressler & Kirton* and *Messrs. Hurd, Rhoades, Hall & McCabe,* for Respondent, submitted a brief; *Mr. George E. Hurd* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment entered on directed verdict in an action for conversion.

Plaintiff sought to recover the value of thirty head of horses and fifteen colts, seized and sold by the defendant while acting as foreman of a duly created round-up district in Phillips county. Issue being joined, the cause was tried to the court and jury, and by stipulation, admissions and uncontradicted testimony, the questions for determination were narrowed to the time of day when the sale was held and the value of the horses. On these questions the plaintiff and one other testified that the sale was held prior to 8 A. M. The plaintiff was permitted to fix a value on his horses, and then called one Lars Rasmussen, who, after preliminary interrogation, which will later appear, was asked to state the value of the horses, to which question defendant objected on the ground that no proper foundation had been laid. The objection was sustained.

At the opening of defendant's case, plaintiff objected to the introduction of any testimony in defense, on the ground that the Act under which defendant presumed to act is unconstitutional. The objection was overruled, and defendant made his defense and rested; his counsel then moved the court to instruct the jury to return a verdict for the defendant, which motion was granted, and, on return of the directed verdict, judgment was entered thereon.

Plaintiff has appealed from the judgment, and assigns error upon (1) the exclusion of Rasmussen's testimony as to the value of the horses; (2) the admission of testimony on the part of the defendant; and (3) the taking of the case from the jury.

1. Plaintiff's witness, Rassmussen, testified that he was a farmer and had had experience in "raising, handling, and dealing in horses," thus bringing himself within the rule an-

nounced in *Klind* v. *Valley County Bank of Hinsdale*, 69 Mont. 386, 222 Pac. 439. However, "dealing in" means buying and selling for the purpose of gain (*Saunders* v. *Russell*, 78 Tenn. 293; *Bates* v. *Bank*, 2 Ala. 451), and includes the idea of a market for the property, or that there is a present opportunity to dispose of it. In the *Klind Case* the property involved consisted of cattle for which there may have been no local market created, but which had a recognized market price somewhere. Here the witness testified, before being asked to express his opinion as to the value of the horses, that he knew of no market for that kind of horses, in the vicinity or elsewhere, "that I know of." His testimony that he had *dealt* in horses, therefore, had reference to a time in the past when conditions differed from those existing at the time of the alleged conversion of these horses.

The measure of damages is "the value of the property at the time of its conversion" (sec. 8689, Rev. Codes 1921), which usually means the market value (*James* v. *Spear*, 69 Mont. 100, 220 Pac. 535); but property may have a value, notwithstanding there is no market for it, and it will not do to say that, because not bought and sold in the market, valuable property may be taken or destroyed and the owner receive nothing therefor (*Union Pacific Ry. Co.* v. *Williams*, 3 Colo. App. 526, 34 Pac. 731). However, if there is no market anywhere, as well as no local market established, the value of the property should be established by laying a foundation for proof on some recognized theory or measure of value. "The value of nonmarketable property may be shown by evidence of its cost, manner of use, general condition and quality * * * and by other facts which would naturally affect the minds of parties desiring to buy or sell" (13 Ency. of Evidence, 524), a dog may be shown to have a market value, or to have some special or peculiar value to its owner, to be ascertained by reference to its usefulness and services. (Horwitz, Jones' Commentaries on Evidence, 864.) Having shown in advance that there was known to the witness no market

for horses such as are the subject matter of the action "anywhere," foundation should have been laid for proof of value, other than market value, and, in the absence of such a foundation, no error was committed in refusing to permit the witness to place a fanciful value on the horses.

2. On objection to the introduction of defendant's testimony, plaintiff asserted that the Act providing for the creation of round-up districts is violative of many provisions of our Constitution, but on appeal only those matters herein discussed are presented.

The Act under which the round-up district in question was created (Chap. 29, Laws of 1927) has in view the ridding of our public ranges of abandoned horses, by the gathering thereof within created districts, their advertisement for sale, and sale at public auction; an "abandoned horse" being described as any animal of the genus *equus* of the age of one year or over which is unbranded, or, if branded, which has escaped taxation for the year preceding its impounding, including foals running with dams.

Plaintiff's mares were branded, but escaped taxation for the year 1926, and were not listed for taxation for the year 1927, when, in May or June, 1927, they were taken up by defendant's round-up crew. Thus it appears that the horses were impounded, under the provisions of the Act, as "abandoned" before the law was enacted. Plaintiff, therefore, asserts that the Act is retroactive and unconstitutional, in that it violates section 11 of Article III of our Constitution, which provides that "no ex post facto law, nor law impairing the obligation of contracts, or making any irrevocable grant of special privileges, franchises, or immunities, shall be passed. * * * "

"There is no prohibition in our Constitution against retrospective legislation, other than that" contained in this section (*Bullard* v. *Smith,* 28 Mont. 387, 72 Pac. 761, except section 13, Article XV, which has no application here), and therein the prohibition against the passage of ex post facto

laws has no application, as the term relates to crimes, and not to civil proceedings, which affect private rights retroactively (*Kentucky Union Co.* v. *Kentucky*, 219 U. S. 140, 55 L. Ed. 137, 31 Sup. Ct. Rep. 171; *Bankers' Trust Co.* v. *Blodgett*, 260 U. S. 647, 67 L. Ed. 439, 43 Sup. Ct. Rep. 233). The legislature was therefore free, so far as constitutional provisions are concerned, to pass any retroactive laws which .do not violate the obligations of contracts or interfere with any vested rights. (*Bullard* v. *Smith*, above; *Falligan* v. *School District*, 54 Mont. 177, 169 Pac. 803.)

The Act under consideration does not command, by its context, that it be given a retroactive effect, and is not violative of any constitutional provision.

Plaintiff, however, contends that, in order to affect his rights, the statutes must be given retroactive effect, and therefore a taking under this Act is no defense to this action. While the plaintiff had a vested right in the subject matter of this action, he had no right to so use his property as to injure others, and had no vested right to the enjoyment of that property without the payment of taxes thereon. The Act in question was passed in the exercise of the police power of the state. (*Jorgenson* v. *Story*, 78 Mont. 477, 254 Pac. 427.) It declares any abandoned horses running at large on the range to be a public nuisance and a public menace, and condemns all such animals, but subject to the right of the owner of any such animal to reclaim it as in the Act provided. The Act, therefore, in providing for the sale of such animals, but provided additional means of enforcing the pre-existing obligation of owners of property not to maintain the same as a public nuisance.

Again, the law requires every owner of property to list it for taxation and to pay the taxes thereon as his contribution to the expenses of government. The Act under consideration provides for ample notice of the taking up of such animals and of their proposed sale, and accords the owner thereof ample opportunity to purge his animals of the charge of being "aban-

doned" by the payment of the taxes and charges thereon, and proof of ownership, prior to sale. (Secs. 6, 7 and 8, Chap. 29, Laws of 1927.) It provides for the halting of the sale, pending proof of ownership. The plaintiff had notice and knowledge of the taking up of his horses and of their proposed sale, and every opportunity to save them from the sale, and their loss, if they have been lost to him, is due, not to the retroactive effect of the law, but to his failure to perform a duty imposed upon him by law; that is, the listing of the horses for taxation and the payment of the just impost upon them. Laws which have a retroactive effect are clearly valid, where they merely add to the means of enforcing existing obligations and are just and reasonable; this has always been the rule. (1 Kent's Commentaries, 456.)

Clearly this law is just and reasonable; it does not, of itself, deprive the plaintiff of his property right in his horses, and it affords him ample time and opportunity to protect his rights, if he saw fit to do so. His property was held subject to the police power of the state and of the taxing power thereof, and the Act but enforces obligations theretofore existing (*Colvill* v. *Fox*, 51 Mont. 72, L. R. A. 1915F, 894, 149 Pac. 496), and is not objectionable because it furnishes a further means of enforcing those obligations.

3. Section 5 of the Act provides for the round-up of all abandoned horses within the district created under it and their sale at public auction. Section 10 provides the manner of handling the funds resulting from such sale, and declares that "any person making claim to the board of county commissioners * * * within six (6) months from the date of sale," on proof of ownership, shall be entitled to receive the excess of the sale price of his horse or horses, over the taxes, penalties, and round-up fee. Section 11 requires the round-up foreman to keep an accurate record of the proceedings had under the order for such round-up, and file report thereof within thirty days after the round-up is completed, which report shall include a complete financial statement and

a list of the number and description of all horses impounded and the disposition thereof.

The undisputed evidence in this case is that plaintiff's horses, with many others, were rounded up in May and June, and were sold on July 9, 1927, and that the defendant did not make the report required by section 11 within thirty days after that date, or at any time prior to the trial. Defendant testified on February 25, 1928, that the round-up was not yet completed, and that he intended to make the report within thirty days after completion.

Plaintiff contends that, unless the sections above referred to be read together to require the making of the report within thirty days after the sale of horses gathered at such a round-up as is contemplated, the Act is violative of section 27 of Article III of the Constitution, as depriving him of his property without due process of law; his argument being that without the required record of the proceedings of the round-up, an owner is not in a position to file his claim.

We are not, however, called upon to determine how the Act, ▇ in this respect, shall be construed, as it is elementary that one who is not affected by a statute will not be heard to question its constitutionality (*State ex rel. Holliday* v. *O'Leary,* 43 Mont. 157, 115 Pac. 204; *Pohl* v. *Chicago etc. Ry. Co.,* 52 Mont. 572, 160 Pac. 515; *Hill* v. *Rae,* 52 Mont. 378, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495, 158 Pac. 826), and this court will determine the validity of a statute only when such determination is necessary to a decision in the case before it (*In re Bank's Estate,* 80 Mont. 159, 260 Pac. 128).

Proceeding under section 10 above, a claimant admits the ▇ legality of the sale and claims the balance in the treasury over and above the charges against his horses for taxes, penalties, and round-up fees. As the testimony shows that plaintiff's horses sold for less than five dollars per head, and the statute provides that the round-up fee is five dollars per head, there was no excess to be claimed, and therefore, no

matter how these provisions are construed, plaintiff's property rights remain unaffected.

4. The specification that the court erred in directing the ■ verdict is based upon the contention that plaintiff was entitled to go to the jury on his evidence that the sale was held prior to 8 A. M., and was therefore illegally conducted. With this contention we agree.

Section 8 of the Act requires that all sales conducted pursuant to the Act shall be held "between the hours of eight (8) o'clock in the forenoon and six (6) o'clock in the afternoon." As in the case of the herd law, with which it is analogous, the provisions of the Round-up Act must be strictly followed, in order to afford protection to those responsible for the impounding and sale of animals under its provisions; if the sale was held prior to 8 A. M., the sale was illegal, and constituted a conversion of the animals. (*Jorgenson* v. *Story,* above.) The question of the time of sale was therefore vital.

The plaintiff testified that, on the morning of July 9, he went to Malta between 6 and 7 A. M., and there had attorney Gabriel draw up a notice of ownership, which he signed and took to the sheriff for service on the round-up foreman, "right around 7:30"; that he met the defendant on the street "probably between ten and fifteen minutes to 8," and was told that the sale had already been held; that he then met one Beske, to whom he showed his watch, which then stood at seven minutes to 8; that he then went to Gabriel's office, where he compared his watch with Gabriel's, and they both showed that it lacked five minutes of being 8 o'clock. He further testified that at 9 A. M. he compared his watch with Western Union time, and found it one minute fast, and at 1 P. M. he compared it with the local jeweler's time, and again found it one minute fast. Beske testified to meeting plaintiff and observing the time by plaintiff's watch, but fixed the time as five minutes of 8. The defendant and a number of witnesses on his behalf disputed this testimony.

The court, in passing upon the motion for a directed verdict, said: "Now, in this case, the testimony of the plaintiff is positive enough as to the time of the holding of this sale, although he didn't attend the sale himself, * * * but subsequently seven or eight other witnesses have testified this sale wasn't held until after 8 o'clock. There is an inference, perhaps, in the presumption that the plaintiff was mistaken. I do not pretend to say; I do not intimate that any witness has willingly testified falsely in this case." Thus the court passed directly upon the weight and sufficiency of the evidence, without determining that there was anything inherently improbable or unbelievable in plaintiff's testimony.

The court evidently construed statements found in the opinion in *McIntyre* v. *Northern Pacific Ry. Co.*, 56 Mont. 43, 180 Pac. 971, as authorizing the court to pass upon the weight of the evidence in resolving a motion for a directed verdict, and counsel for defendant now rely upon that decision to support the court's action. Therein it is said: "The rule prevails in this jurisdiction that, whenever the evidence is in such condition that, if the case should be submitted to the jury and a verdict be returned for plaintiff, it would be the duty of the court to grant a new trial, the court may direct a verdict for defendant. (*Escallier* v. *Great Northern Ry. Co.*, 46 Mont. 238, Ann. Cas. 1914B, 468, 127 Pac. 458; *Bean* v. *Missoula Lumber Co.*, 40 Mont. 31, 104 Pac. 869.) The rule prevails generally. (38 Cyc. 1563–1565.) The legal duty to grant a new trial arises whenever the evidence, in weight, does not justify the verdict. (*Hamilton* v. *Monidah Trust*, 39 Mont. 269, 102 Pac. 335.) The substance of these two rules is epitomized in our statute. Subdivision 5, sec. 6714, Revised Codes, provides that the court may dismiss an action or grant a nonsuit, upon motion of defendant, when upon the trial the plaintiff fails to prove a sufficient case for the 'jury.' Other subdivisions of the same section authorize the court to withdraw a case from the jury if the plaintiff fails to produce *any* evidence. Subdivision 5 must therefore refer

to a case in which the plaintiff has tendered some evidence in support of the complaint, but the evidence is legally insufficient to sustain a verdict, and this insufficiency may arise from the inherent weakness of the testimony itself.'' The court then sustained the judgment entered on directed verdict upon the ground that the trial court was justified on the theory that the plaintiff's testimony was so improbable—''the mere guess or conjecture of the witness''—as to be unbelievable, and therefore to amount to no legal evidence. While the opinion is not based upon the theory that the trial court could properly weigh the evidence and direct a verdict on its determination that the evidence preponderated in favor of the defendant, the above-quoted statements, and particularly those referring to the effect of the provisions of subdivision 5 of section 6714, carry the implication that such is the rule. Such a holding was not necessary to a determination of the *McIntyre Case,* and is neither in harmony with the oft-repeated rule in this jurisdiction nor justified by the provisions of the statute quoted.

Section 6714 of the Revised Codes of 1907 now appears in its entirety as section 9317, Revised Codes of 1921; it provides for the dismissal of an action or the entry of judgment of nonsuit (1) by the plaintiff, before trial; (2) by either party with the consent of the other; (3) by the court, on motion of defendant, when plaintiff fails to appear for trial; (4) by the court, when plaintiff abandons his case before submission on trial; (5) by the court, on motion of defendant, ''when, upon the trial, the plaintiff fails to prove a sufficient case for the jury''; (6) when the prevailing party fails to have judgment entered within six months after the verdict or final submission; and (7) when summons is not issued within one year and served and returned within three years.

By no construction of these provisions can it be shown that the court is authorized to take a case from the jury, while both parties are seeking a verdict, under any subdivision other

than subdivision 5. (See *Bennetts* v. *Silver Bow Amusement Co.*, 65 Mont. 340, 211 Pac. 336.)

As the jurors are the sole judges of the weight and sufficiency of the evidence, and are not bound to decide in conformity with the declarations of any number of witnesses which do not produce conviction in their minds (sec. 10672, Rev. Codes 1921); as the direct evidence of one witness entitled to full credit is sufficient proof of any fact, except perjury or treason (sec. 10505, Id.), and may constitute a preponderance of the evidence against a greater number of witnesses who testify to the contrary (*McQuay* v. *McQuay*, 81 Mont. 311, 263 Pac. 683), a failure to prove "a sufficient case for the jury" can mean no more than that the evidence adduced on behalf of the plaintiff is *legally* insufficient to warrant the jury in finding for the plaintiff.

Whether any substantial evidence has been introduced by the plaintiff becomes a question of law for the court on demurrer to the evidence by motion for nonsuit or for a directed verdict (*Lee* v. *Stockmen's Nat. Bank*, 63 Mont. 262, 207 Pac. 623; *Barrett* v. *Shipley*, 63 Mont. 152, 206 Pac. 430); but while the legal insufficiency or unsubstantial nature of the evidence may appear from the inherent weakness of the evidence itself (*McIntyre* v. *Northern Pac. Ry. Co.*, above), or because it is unreasonable or incredible in itself (*Vukmanovich* v. *State Assurance Co.*, 82 Mont. 52, 264 Pac. 933), or because it is from its very nature and the surrounding circumstances unworthy of belief (*Roman* v. *Albert*, 81 Mont. 393, 264 Pac. 115), no case should be taken from the jury on motion for a directed verdict, when reasonable men may draw different conclusions from the evidence or where there is substantial evidence to support the complaint, but only where from the undisputed facts the conclusion necessarily follows, as a matter of law, that a recovery cannot be had on any view which may reasonably be taken from the facts established (*Bell* v. *Grimstad*, 82 Mont. 185, 266 Pac. 394).

The court erred in withdrawing the case from the jury. The judgment is reversed, and the cause remanded to the district court of Phillips county for a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.