STATE ex rel. HARRISON, COUNTY ATTY., Respondent,
v. DENIFF et al, Appellants.

No. 9086.

Submitted January 15, 1952. Decided June 10, 1952.

245 Pac. (2d) 140.

Mr. Willis M. McKeon, Malta, Mr. Edwin E. Multz, and Mr. Clarence Hanley, Helena, for appellants.

Mr. James T. Harrison, County Atty., Malta, Mr. Arnold H. Olsen, Atty. Gen., Mr. William H. Coldiron, Asst. Atty. Gen., for respondent.

Mr. Myles J. Thomas, Mr. Leif Erickson, Helena, Mr. Bert W. Kronmiller, County Atty., Hardin, Mr. Nat: A. Allen, County Atty., Ryegate, Mr. Wesley Castles, County Atty., Missoula, Mr. John M. Comfort, County Atty., Virginia City, Mr. John M. Dietrich, Jr., County Atty., Deer Lodge, Mr. Roy W. Holmes, County Atty., Ekalaka, Mr. Ted James, County Atty., Great Falls, Mr. Jack R. Loucks, County Atty., Wolf Point, Mr. J. J. McIntosh, County Atty., Forsyth, Mr. Eugene H. Mahoney, County Atty., Thompson Falls, Mr. Michael J. O'Connell, County Atty., Bozeman, Walter T. Murphy, County Atty., Superior, Mr. Lloyd A. Murrills, County Atty., Cut Bank, Mr. Robert T. Pantzer, County Atty., Livingston, Mr. M. L. Parcells, County Atty., Columbus, Mr. O. J. Paulson, County Atty., Big Timber, Mr. Hubert A. Simmons, Jr., County Atty., Red Lodge, Mr. Bernard W. Thomas, County Atty., Chinook, amici curiae.

Mr. Multz, Mr. Hanley, Mr. Olsen and Mr. Coldiron argued orally.

PER CURIAM.

Defendants have appealed from a judgment of abatement declaring certain described premises situated in the town of Malta to be a common nuisance in that the operation of punch boards therein constituted gambling contrary to law. Some of the punch boards offered a prize consisting of cash and others merchandise. In each the player gave a cash consideration for a chance to win either cash or merchandise, depending upon whether the player punched a lucky number.

Defendants rely upon sections 93-6101, 94-35-167, and 57-102, R. C. M. 1947, but this proceeding was brought under sections 94-1002 and 94-1003, R. C. M. 1947, which in substance declare buildings a nuisance wherein gambling is carried on contrary to any of the laws of the state and authorize their abatement.

The sole question is whether the operation of punch boards constitutes gambling contrary to the laws of the state. Clearly the operation of the punch boards constitutes a lottery as defined in R. C. M. 1947, sec. 94-3001.

"Play at lottery is gambling." State ex rel. Leahy v. O'Rourke, 115 Mont. 502, 146 Pac. (2d) 168, 169. But defendants contend that their operations were made legal and lawful by sections 94-2401 and 84-5701, R. C. M. 1947, and that because of section 57-104, R. C. M. 1947, there is no nuisance.

Section 57-104 provides: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."

Section 94-2401, R. C. M. 1947, prohibits the operation or the conduct of all gambling, but it provides that "it shall be lawful for cigar stores, fraternal organizations, charitable organizations, drug stores and other places of business" to operate certain enumerated games to be played for pastime and amusement only upon payment of a ten dollar license fee per table used or operated in such place of business; "and that places of business may, upon the payment of a license fee therefor to the county treasurer in the sum of ten dollars ($10.00) annually, exhibit for use and sale to all customers not minors, trade stimulators, such as pull boards and ticket boards, where each

board so used returns to the owner or business not to exceed the going retail price of the goods disposed of and sold and disposed of through the use of the same, and which goods sold and disposed of through the use of the same must not be other than the goods constituting the usual stock in trade of the business using the same."

Section 84-5701 defines the word "trade stimulator" as "any device or object housing, containing or enclosing, or having as a part thereof numbered tickets, variegated symbols and tokens of any pull board, ticket board or punch board or their equivalents, any one or more of which announces that an award will be made to a purchaser thereof in terms of merchandise or other things of value, but does not mean a slot machine or mechanical device."

Section 84-5702 provides in part: "From and after the effective date of this act, it shall be lawful for any person as defined herein, to exhibit for use and for sale and to exhibit, sell and use trade stimulators, which, for the purposes of this act, shall be considered any device or object housing, containing or enclosing, or having as a part thereof numbered tickets, variegated symbols, and tokens, or any pull board, ticket board, or punch board, or their equivalents, any one or more, of which announces that an award will be made to a purchaser thereof in terms of merchandise or other things of value, upon the exhibitor permanently affixing to such trade stimulator a use tax stamp of the value hereinafter prescribed. * * *"

Therefore, it is the contention of defendants that inasmuch as the above sections have made it lawful to use and operate punch boards, there can be no nuisance under the provisions of section 57-104 for the reason that they were maintaining them under the express authority of the above statutes.

It is the state's contention that these sections are in conflict with Article XIX, sec. 2, of our Constitution, which provides: "The legislative assembly shall have no power to authorize lotteries, or gift enterprises for any purpose, and shall pass laws

to prohibit the sale of lottery or gift enterprise tickets in this state.''

There has been much discussion in the decisions from the ▮ various states and in the briefs of counsel and *amici curiae* as to the distinction between lotteries, gambling devices and betting. The cases and texts are full of decisions discussing the question as to whether the constitutional definition of the word ''lottery'' is the same as the present statutory definition, namely, ''a lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it * * *'' (R. C. M. 1947, sec. 94-3001) or whether in addition to the three elements of prize, consideration and chance there must be other elements, such as sale of tickets, or whether it must be a gift enterprise, or whether there must be a widespread distribution, or whether there must be a scheme or system. It is not necessary in this case to go into the fine distinctions between the definition popularly given to the word ''lottery'' and its generally accepted meaning or the meaning applied under a more complex definition including other elements than the three mentioned, because in this case all of the elements are present. These punch boards have tickets. The widespread distribution or ''pestilence'' is present all over the state. They do comprise a system, and therefore under any definition of lottery these punch boards and pull boards are included and are within the constitutional prohibition. Therefore, the legislature had no power to pass an act authorizing the use of punch boards or pull boards, whether known as trade stimulators or any other name, and had no power to authorize the licensing of such devices. Sections 94-2401 et seq. and 84-5701 et seq., authorizing and licensing so-called trade stimulators, are void and invalid as violative of the constitutional prohibition.

This court in State ex rel. Dussault v. Kilburn, 111 Mont. 400, 109 Pac. (2d) 1113, 1115, 135 A. L. R. 99, said: '' ' ''In no field of reprehensible endeavor has the ingenuity of man

been more exerted than in the invention of devices to comply with the letter but to do violence to the spirit and thwart the beneficent objects and purposes of the laws designed to suppress the vice of gambling. * * *'' (City of) Moberly v. Deskin, 169 Mo. App. 672, 155 S. W. 842.' '' Quoting from the case of Harvie v. Heise, 150 S. C. 277, 148 S. E. 66, 69.

The same statement might be made with respect to lotteries and gift enterprises. Each case must be decided upon the facts as presented to the court. The case at bar clearly includes all of the elements of a lottery under any of the definitions presented.

However, defendants contend that until the statutes are declared unconstitutional they cannot have their premises abated when they operated in compliance with that statute. This contention is without merit. In the first place, as to some of the boards in question defendant had not paid the tax or license fee required by the above cited statutes, and hence, as to such boards, they were not being operated in conformity with the statutes. Likewise, the good faith of defendants is a matter to be considered by the trial court upon application of the owner under the provisions of section 94-1009, R. C. M. 1947.

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE ADAIR: (concurring in part and dissenting in part).

The appellants wholly failed to set forth in their brief any specification of the errors relied upon by them thereby failing to comply with the requirements of subsections lettered c and d of subdivision 3 of Rule X of this court for which reasons the judgment of the district court should be affirmed. However the majority opinion assumes to decide questions which were never presented to the trial judge nor raised in his court and on which no error has been assigned or specified in this court and which are not properly presented to us for review. The statements and conclusions so indulged by the justices on questions and points of law not in issue nor properly before

this court on this appeal are purely gratuitous observations that have no greater force or weight than mere *obiter dictum*.

For these reasons I concur in affirming the judgment of the district court but cannot agree with what is said in the majority opinion nor in the attempt to therein determine constitutional questions entirely unnecessary to a determination of this case or to upholding the district court's decree and order.

MR. JUSTICE FREEBOURN: (dissenting).

The question of the constitutionality of the statute legalizing punch boards is not properly before this court for two reasons: (1) The question of lottery is not raised by the pleadings; and (2) such constitutionality is not raised by anyone who is directly injured in a legal right by the enforcement of the punch board statute.

It is evident from the record that this action was not intended to punish defendants for a law violation. It is used simply as a vehicle to have this court determine that the state statutes legalizing punch boards are unconstitutional, as contravening that section of our Constitution which prohibits lotteries. In this respect it is no different than where proceedings are instituted seeking a declaratory judgment for the same purpose.

Defendants were neither charged with the crime of operating a lottery nor maintaining a nuisance in the form of a lottery. They were not charged with the crime of illegal gambling, but with maintaining a nuisance in the form of illegal gambling, viz., maintaining in their place of business, the Stockman, "trade stimulators, such as ticket boards and punch boards * * * used by them in conducting, operating" and "maintaining * * * gambling."

The lower court said these "abatement proceedings based upon the complaint * * * involve a charge of gambling; * * * the charge is that the premises were maintained for conducting gambling, specifically * * * that the defendants maintained on the premises trade stimulators such as ticket boards * * *." In its judgment the lower court said: "Now, it is the conclusion

of this court from the evidence in this case that all the boards that were operated in the place of business constitutes a violation of the Hickey gambling law of this state and that a permanent injunction * * * will be issued. However, if an appeal is taken * * * to determine what the courts are going to say about the Hickey gambling act insofar as it affects punch boards, that injunction order will not be made as drastic as it could be. * * * Q. I presume you will appeal the case? A. The defense will appeal the case. The Court: Well, I want that assurance * * *'' Defendants' business was not closed and no bond was required to remain open.

Under our statutes unlawful gambling and lotteries are separate and different offenses. See: Gambling, R. C. M. 1947, secs. 94-2401-94-2428; and Lotteries, R. C. M. 1947, secs. 94-3001-94-3011.

Our State Constitution recognizes the difference by specifically prohibiting lotteries, while not prohibiting gambling.

Under the complaint, the only question properly before the lower court and this court is: Did the defendants maintain a nuisance by conducting illegal gambling in operating punch boards.

Since the Constitution does not prohibit the legislature from enacting laws permitting gambling, and since the legislature had legalized punch boards, and defendants were not charged with operating a lottery, and it was not charged that punch boards constituted lotteries, the lower court should have found no nuisance existed by reason of illegal gambling in the operation of punch boards. The fact that some punch boards had no stamps upon them could give rise only to a separate charge under R. C. M. 1947, sec. 84-5702, making such lack of stamps a misdemeanor punishable by a fine up to $100 for each separate offense.

Defendants sustained no injury as a result of the enforcement of the punch board law nor do they complain hereof. Certainly the state is not injured by its enforcement since it receives much needed revenue therefrom.

What Justice Gibson said in Chovanak v. Matthews, 120 Mont. 520, 188 Pac. (2d) 582, 584, well applies here, viz.: "It is by reason of the fact that it is only judicial power that the courts possess, that they are not permitted to decide mere differences of opinion between citizens, or between citizens and the state, or the administrative officials of the state, as to the validity of statutes. * * *

"As to the various charges of unconstitutionality levelled against Chapter 142 [Laws of 1945] by the appellant, it is elementary that none thereof may be considered unless raised by someone who is directly injured in a legal right by the enforcement of the statute, and then only where determination of the constitutional question is rendered necessary to protect the suitor in such invaded right. Pierson v. Hendricksen, 98 Mont. 244, 38 Pac. (2d) 991; Durocher v. Myers, 84 Mont. 225, 274 Pac. 1062; Barth v. Pock, 51 Mont. 418, 155 Pac. 282. * * *

"It is held in Montana, as it is held by the United States Supreme Court, and by courts throughout the nation, that a showing only of such interest in the subject of the suit as the public generally has is not sufficient to warrant the exercise of judicial power. Barth v. Pock, supra; State ex rel. Holliday v. O'Leary, 43 Mont. 157, 115 Pac. 204; Spratt v. Helena Power Transmission Co., 37 Mont. 60, 94 Pac. 631.

"The Supreme Court of the United States also holds that 'only those to whom a statute applies and who are adversely affected by it can draw in question its constitutional validity in a declaratory judgment proceeding as in any other.' Alabama State Federation of Labor, etc. v. McAdory, 325 U. S. 450, 65 S. Ct. 1384, 1390, 89 L. Ed. 1725.

"A long line of Montana decisions holds in accordance with this rule of the United States Supreme Court. We cite a few of the many cases so holding: State ex rel. Riley v. District Court, 103 Mont. 576, 64 Pac. (2d) 115; State ex rel. Brooks v. Cook, 84 Mont. 478, 276 Pac. 958; Barth v. Pock, supra; Shea v. North-Butte Mining Co., 55 Mont. 522, 179 Pac. 499.

118

"Nor does the fact that the action here is brought under the Uniform Declaratory Judgments Act, Chapter 90, Revised Codes of Montana 1935, change the rule. It is still judicial power that is sought to be invoked, and that power only extends to actual 'cases' and 'controversies,' not to abtract questions. Muskrat v. United States, 219 U. S. 346, 31 S. Ct. 250, 55 L. Ed. 246; Holt v. Custer County, 75 Mont. 328, 243 Pac. 811.

"A text writer, Anderson on Declaratory Judgments, section 31, says: 'The rule is not different in declaratory judgment actions from that obtaining with regard to actions generally, as to the necessity of a personal right in the plaintiff to maintain the action. * * * The general rule is that a party having only such interest as the public generally has cannot maintain a declaratory judgment action.' " See also Thomas v. Riggs, 67 Idaho 223, 175 Pac. (2d) 404.