No. 12517

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

STATE EX REL, ROBERT WOODAHL,
Attorney General of the State
of Montana, and LAWRENCE G. STIMATZ,
County Attorney of Silver Bow County,
Montana,

Petitioners,

-vs-

THE DISTRICT COURT OF THE SECOND JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND FOR
THE COUNTY OF SILVER BOW, and the HONORABLE
JAMES D. FREEBOURN et al.,

Respondents.

ORIGINAL PROCEEDING:

Counsel of Record:

For Petitioners:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana.
Edward Laws argued, Assistant Attorney General,
Helena, Montana.
Lawrence G. Stimatz appeared, County Attorney, Butte,
Montana.
William Kirkpatrick appeared, Butte, Montana.

For Respondents:

Hon. James D. Freebourn, District Judge, argued,
Butte, Montana
Maurice F. Hennessey argued, Butte, Montana.

Submitted: June 1, 1973

Decided: JUN 1 9 1973

Filed: JUN 1 9 1973

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an original proceeding seeking a writ of supervisory control over the district court of the second judicial district, the Honorable James D. Freebourn presiding. Petitioners are the Montana Attorney General and the County Attorney of Silver Bow County. On ex parte application this Court issued an order which stated in part:

> "Petitioners in this original proceeding seek a writ of supervisory control or other appropriate writ to reverse the action of the district judge in quashing an information and dismissing the action filed therein and in finding that gambling and lotteries are now authorized in the state of Montana. Counsel was heard ex parte and the matter taken under advisement.

> "The Court now being advised in the premises, it desires that an adversary hearing be held herein to ascertain whether or not this Court should assume jurisdiction and decide this controversy and the respondent district judge through counsel and applicant, be and appear before this Court at the hour of 9:30 a.m. on June 1, 1973, to orally argue and present briefs in typewritten form on the issues involved.

> "That the parties herein be prepared to argue the force, effect and validity of sections 94-2401 through 94-2403, R.C.M. 1947, under the provisions of Article XIX, section 2, Constitution of Montana, 1889, and Article III, section 9, Constitution of Montana, 1972.

> "That the actions of the respondent district judge in Cause Number 9033 be and are stayed pending the determination of the matters in the cause of action."

Return and answer was made, briefs filed and the matter argued.

On May 14, 1973, petitioner County Attorney Stimatz filed an Information in respondent district court charging one Nick Elakovich with possession of gambling equipment under the provisions of section 94-2401, R.C.M. 1947. Immediately upon the Information being filed, defendant's attorney moved to quash the Information. The motion and ruling by respondent court were:

> "MR. HENNESSEY: At this time, Your honor, I would move to quash the information on the grounds and for the reasons that the information taken together with the request for leave of information, does not constitute a public offense under the laws of the State of Montana. It being my position that when the Constitutional

Convention presented to the people of the State of Montana a referendum vote on whether or not gambling should be allowed in the State of Montana, the people of the State of Montana voted one hundred thirty-nine thousand three hundred eighty-two (139,382) to eighty-eight thousand seven hundred forty-three (88,743) in favor of allowing gambling in the State of Montana. I would like to have marked as an exhibit for my motion the certification of the Secretary of the State as a result of the vote. It is my position, that because of the expression of the opinion of the people of the State of Montana, that we have in effect a referendum and that there are no laws on the books which prohibits gambling in the State of Montana. I have a second position that the information does not state a cause of action or a criminal offense against the defendant, in that Section 94-2401, Revised Codes of Montana, 1947 as amended, allows a limited form of gambling within the State of Montana and the Constitution specifically provided, the new Constitution specifically provided, irrespect of the referendum that all laws that are on the statutes, that are on the books, that are not contrary to the new Constitution shall be in full force and effect unless otherwise changed or allowed to expire. My position, the Legislature having met and having not repealed that section of the law, that the information charging the defendant is insufficient and should be quashed. I feel we are in the position where there are either no laws as a result of the referendum, or that the most or the least affect would be that there are laws on the books allowing gambling which have not been repealed, and the referendum at least proves these laws and the new Constitution by its saving clause or affirmment clause.

"THE COURT: Let the records show that appearing to the Court that the Constitutional Convention by its action and by the act of the people with their vote and by the Legislature of its proceedings, that there appears to the Court to be laws authorizing gambling in Montana with no laws prohibiting gambling in Montana. Therefore, the motion of counsel for the defendant is granted and the information is ordered quashed as prayed for by and moved by counsel."

Thus, respondent court's order is based upon the reasoning that the vote of the people on June 6, 1972, on the 1972 Constitution in favor of contingent proposition number 3 and the action of the 1973 Legislative Assembly in not repealing section 94-2401, R.C.M. 1947, left Montana with no laws prohibiting gambling, and particularly no law prohibiting possession of gambling equipment.

Petitioners contend the trial judge acted under a mistake of law in quashing the Information. They set forth these three issues:

1. Whether the 1937 amendment of what is now section 94-2401, Revised Codes of Montana, 1947, is invalid and of no force and effect under the provisions of Article XIX, section 2, Constitution of Montana, 1889?

2. Whether the passage of the Constitution of Montana, 1972, and specifically Article III, section 9, Constitution of Montana, 1972, and the actions of the Forty-third Legislative Assembly made valid now or in the future the 1937 amendment to what is now section 94-2401, R.C.M. 1947, and invalidated all laws of the state of Montana prohibiting gambling?

3. Whether this Court has jurisdiction to issue a writ of supervisory control or other appropriate writ in this matter?

Respondent court, appearing pro se by brief and oral argument, expands its ruling quoted above by asserting that (a) possession of punchboards in themselves is not a violation of section 94-2401; (b) that section 94-2401 is made inoperative by the vote of the people at the constitutional election; and (c) that, in any event, as of July 1, 1973 when the new Constitution becomes operative, section 94-2401 was repealed by the vote of the electorate on the new Constitution. As to petitioners' issue No. 3, set forth heretofore, on the availability of the writ of supervisory control, respondent court asserts that the remedy by appeal is adequate. We shall deem this assertion to be a motion to quash and hereby deny that motion.

We will first discuss issue No. 3. Petitioners assert that remedy by appeal is not adequate since the ruling of the district court creates grave uncertainty as to the status of Montana law regarding gambling and thus imposes an impossible burden on law enforcement officials. We agree with this assertion and under the authority of State ex rel. Whiteside v. First Judicial District Court, 24 Mont. 539, 63 P. 395, and State ex rel. Harrison v. District Court, 135 Mont. 365, 340 P.2d 544, we exercise our discretion to invoke original jurisdiction.

We next consider petitioners' issue No. 1, the validity or invalidity of section 94-2401, R.C.M. 1947, particularly as to the 1937 amendment to what was then section 11159, R.C.M. 1935, (now 94-2401, R.C.M. 1947), the so-called "Hickey Law" passed as Chapter 153, Laws of 1937.

In the 1947 Revised Codes of Montana, the compiler's note following section 94-2401, states:

> "The second proviso of this section (shown in brackets) was rendered void by the decision of the supreme court in State ex rel. Harrison v. Deniff; the validity of the first proviso was cast into serious doubt by that decision. See annotation on 'Constitutionality' below."

Indeed, the entire 1937 amendment was unconstitutional and void. In State ex rel. Harrison v. Deniff, 126 Mont. 109, 113, 245 P.2d 140, this Court said flatly:

> "Sections 94-2401 et seq. and 84-5701 et seq. authorizing and licensing so-called trade stimulators, are void and invalid as violative of the constitutional prohibition." [Art. XIX, sec. 2, Montana Constitution].

This Court, in speaking of Article XIX, sec. 2, Constitution of Montana, 1889, in State ex rel. Steen v. Murray, 144 Mont. 61, 65,66, 394 P.2d 761, to make it even more clear said:

> "The provisions of Article XIX, §2, are both mandatory and prohibitory. Proposed Initiative Measure No. 63 is directly opposed to Article XIX, §2. Measure No. 63 would repeal sections 94-3001 through 94-3011 which sections deal with lotteries in so many words as required by Article XIX, §2, supra.
>
> "The proposed Initiative Measure No. 63 refers only to 'gambling'; it does not mention 'lotteries' specifically but does so by code section reference. Even so, that lotteries are gambling has been determined by this court. In State ex rel. Leahy v. O'Rourke, 115 Mont. 502, 504, 146 P.2d 168, 169, this court said:
>
> > "'Gambling is a generic term, embracing within its meaning all forms of play or game for stakes wherein one or the other participating stands to win or lose as a matter of chance. Play at lottery is gambling.'
>
> "This court has ruled in a number of cases, always consistently. In State v. Cox, 136 Mont. 507, 511, 512, 349 P.2d 104, 106, the court said:
>
> > "'To our mind, the framers of the Montana Constitution who expressly forbade the Legislature to authorize lotteries or gift enterprises and commanded it to pass

laws to prohibit the sale of lottery or gift
enterprise tickets in Article XIX, §2 of the
Montana Constitution, were seeking to suppress and
restrain the spirit of gambling which is culti-
vated and stimulated by schemes whereby one is induced
to hazard his earnings with the hope of large winnings.
The statutes which define and prohibit lotteries must
therefore be interpreted with this purpose in mind.'
See also State ex rel. Harrison v. Deniff, 126 Mont.
109, 245 P.2d 140; State v. Tursich, 127 Mont. 504,
267 P.2d 641.

"It is clear from the foregoing cases that the Legis-
lature could not constitutionally legalize lotteries.

"We have also held that the people exercising the
initiative are subject to the same rules as the
Legislature. See State ex rel. Palagi v. Regan,
113 Mont. 343, 126 P.2d 818; State ex rel. Bonner
v. Dixon, 59 Mont. 58, 74, 195 P. 841."

Thus, the 1937 amendment to section 11159, R.C.M. 1935,

was invalid leaving the section intact as it had been before the

attempted amendment.

The effect of a ruling by a court that a statute or portion

thereof is unconstitutional was discussed in Commissioners of

Roads and Revenues of Fulton County v. Davis, 213 Ga. 792, 102

S.E.2d 180, 182, 183. There the court said:

"'The time with reference to which the constitu-
tionality of an act of the general assembly is to
be determined is the date of its passage, and, if it
is unconstitutional, then it is forever void.' Jones
v. McCaskill, 112 Ga. 453, 456, 37 S.E. 724, 725.
'The general rule is that an unconstitutional statute,
though having the form and name of law, is in reality
no law, but is wholly void, and in legal contemplation
is as inoperative as if it had never been passed.
Such a statute leaves the question that it purports to
settle just as it would be had the statute not been
enacted.' 11 Am.Jur., Constitutional Law, 827 § 148.
Grayson-Robinson Stores v. Oneida, LTd., 209 Ga. 613,
617, 75 S.E.2d 161,163. 'A void staute can be made
effective only by re-enactment.' Grayson-Robinson
Stores v. Oneida, Ltd., supra."

The Supreme Court of Washington in Boeing Company v. State,

74 Wash.2d 82, 442 P.2d 970, 974, stated the proposition in this

manner:

"It is the rule that an invalid statute is a nullity.
It is as inoperative as if it had never been passed.
State ex rel. Evans v. Bhd. of Friends, 41 Wash.2d 133,
247 P.2d 787 (1952).

"The natural effect of this rule is that the invalidity
of a statute leaves the law as it stood prior to the en-
actment of the invalid statute. 82 C.J.S. Statutes § 75
at 132 (1953); 16 Am.Jr. 2d, Constitutional Law § 177 at
405 (1964)."

See also City of Albuquerque v. Reynolds, 71 N.Mex. 428, 379 P.2d 73, 82.

From the above, it is clear that the decision of this Court in Deniff nullified the act relied upon by respondent court in its order.

Respondent court also contends that the vote recorded on contingent proposition number 3 presented with the 1972 Constitution to permit the legislature to authorize gambling should be considered as a "popular referendum" of the people to establish gambling within the state of Montana and thus, impliedly, repeals all prohibitions against gambling currently in force and effect within the state.

However, such a unique proposition finds no support in law or in fact. Proposition number 3 on the official ballot for the June 6, 1972, election for the ratification of the new Constitution read:

> "3A.   FOR allowing the people or the legislature to authorize gambling.
>
> "3B.   AGAINST allowing the people or the legislature to authorize gambling."

Proposition 3A passed, and thus included within the new Constitution Article III, section 9, which states:

> "All forms of gambling, lotteries, and gift enterprises are prohibited unless authorized by acts of the legislature or by the people through initiative or referendum."

In both the language of the ballot and the adopted constitutional provision, it is clear that there must be two actions to legalize gambling within the state:   (1) the passage of the constitutional provision found in Article III, section 9, heretofore cited; and (2) an affirmative act of the people or the legislature subsequent to that adoption.   In the instant situation respondent requests that this Court find both actions accomplished by the singular vote of the people at the election for the ratification of the constitution.   This was not contemplated by the framers of the constitution, the constitutional document itself, or the ballot on which the people voted.

The plain meaning of the language of a statute will be used in construing its meaning. Section 93-401-16, R.C.M. 1947; State ex rel. Cashmore v. Anderson, ____Mont.____, 500 P.2d 921, 29 St. Rep. 653; Anderson v. United States Civil Serv. Comm., 119 F.Supp. 567 (Mont. 1954). The opinions and speculation of the voters and citizens of the state as to the effect of their vote are not permitted to alter the clear meaning of the language employed.

By adoption of the new Constitution the people have authorized the people or the legislature to permit gambling. Until such time as the people or the legislature affirmatively act with the intention to execute the authority granted by Article III, section 9, Montana Constitution,1972, gambling is prohibited.

This brings us to issue No. 2. The passage of the Constitution of Montana, 1972, and the actions of the Forty-third Legislative Assembly did not validate the 1937 amendment to what is now section 94-2401, R.C.M. 1947, and further did not invalidate all laws prohibiting gambling, in particular possession of gambling equipment under section 94-2401.

On June 6, 1972, the people of Montana ratified the Constitution of Montana,1972, as submitted to them by the Constitutional Convention. (See State ex rel. Cashmore v. Anderson, ____Mont.____, 500 P.2d 921, 29 St.Rep. 653). As a contingent alternative issue the people authorized Article III, section 9 of the 1972 Constitution. The issue as it appeared on the ballot is set forth above. Section 3 of the Adoption Schedule of the Constitution of Montana, 1972, set forth the manner of presenting proposition number 3. It provided:

> "(1) If separate issue 3A is not approved by a majority of those voting at the election and if the proposed Constitution is approved by the electors, then section 9 of ARTICLE III, GENERAL GOVERNMENT shall be retained.

> "(2) If separate issue 3A is approved by the electors and if the proposed Constitution is approved by the electors, then section 9 shall be deleted from ARTICLE III, GENERAL GOVERNMENT and the following substituted therefor: 'Section 9. GAMBLING. All forms of gambling, lotteries, and gift enterprises are prohibited unless authorized by acts of the legislature or by the people through initiative or referendum.'"

Section 1 of the Adoption Schedule, Constitution of Montana, 1972, provides:

"This Constitution, if approved by a majority of those voting at the election as provided by the Constitution of 1889, shall take effect on July 1, 1973, except as otherwise provided in sections 1 and 2 of the Transition Schedule. The Constitution of 1889, as amended, shall thereafter be of no effect."

Thus, upon the effective date of July 1, 1973, the Constitution of Montana will no longer prohibit the legislature from authorizing gambling, lotteries or gift enterprises. Until that time the Constitution of Montana, 1889, is still in effect and lotteries and gift enterprises are prohibited and cannot be permitted by acts of the legislature.

The theory was presented to respondent court in cause No. 9033, that the transition schedule of the new Constitution coupled with section 94-2401, R.C.M. 1947, permitted a limited form of gambling. In essence, the theory is that the heretofore unconstitutional provisions of section 94-2401 will be brought to life with the new Constitution on July 1, 1973, since the legislature has not acted to repeal the unconstitutional provisions.

We have already discussed the matter of the status of an unconstitutional piece of legislation such as the so-called "Hickey Law". (Chapter 153, Laws of 1937). That amendment is null and void and of no force and effect now or in the future. The "Hickey Law" will not be resurrected by Section 6 of the Transition Schedule of the new Constitution on July 1, 1973.

Section 6 of the Transition Schedule presupposes that the laws which will be in force upon the effective date of the new Constitution are those which are not contrary to or inconsistent with such constitution and which are presently in force. The "Hickey Law" is not presently in force. This interpretation is consistent with case law throughout the United States dealing with the effect of new amendments which permit something previously prohibited or unconstitutional under previous provisions. While most cases cited hereinafter deal with amendments to existing constitutions, rather than the adoption of a new constitution, they are applicable to the situation here.

A recent New Mexico case, Fellows v. Shultz, 81 N.M. 496, 469 P.2d 141, 146, discussed the effect of a constitutional amendment upon an existing statute which was unconstitutional. The court noted:

> "It is a well-established rule of constitutional law that an unconstitutional statute is wholly void from the time of its enactment and is not validated by a subsequent constitutional change which would allow the enactment of such a statute. [Citing cases]".

A like result was found in Banaz v. Smith, 133 Cal. 102, 65 P. 309, 310, where the California court, in discussing the effect of an amendment on an invalid statute, said:

> "If void from the beginning, the amendment to section 6, art. 11, in 1896, did not give life to such provisions. That would give the amendment the effect of enacting laws instead of merely authorizing the legislature to do so, and it would be to enact a law to which no reference was made, and which the people in adopting the amendment could not have had in mind. Such is not the ordinary function of a constitutional provision, and such effect will not be given to it unless it is expressly so provided."

In speaking of a constitutional amendment permitting the use of voting machines where not permitted before, the court said in City of Little Rock v. Cavin, 238 Ark. 333, 381 S.W.2d 741, 744:

> "It is a well recognized rule of constitutional law that the adoption of a constitutional amendment which merely permits the enactment of a statute of a certain type does not, of itself, validate such a statute which was void when enacted before the adoption of the constitutional amendment. [Citing authorities]."

Other cases to the same effect are: Jamison v. City of Atlanta, 225 Ga. 51, 165 S.E.2d 647; Fortson v. Clarke County, 97 Ga. App. 410, 103 S.E.2d 597; Northern Wasco County People's Utility Dist. v. Wasco County, 210 Ore. 1, 305 P.2d 766; Commissioners of Roads and Revenues of Fulton County v. Davis, supra; Plebst v. Barnwell Drilling Co., 243 La. 874, 148 S.2d 584. See generally: Annotation, 171 A.L.R. 1070-1081.

A number of cases supporting the proposition that a new constitution does not resurrect previously unconstitutional statutes can be found. The Supreme Court of New Jersey in Ex parte De Falco, 9 N.J. 236, 87 A.2d 707, 709, found that an unconstitutional amendment to an existing law dealing with punishment of violators of bookmaking statutes was not validated by adoption of a subsequent constitution. The court said:

> "It is urged any constitutional defect in this regard, in the 1940 statute, has been corrected by the adoption of the 1947 Constitution, which contains no limitation on the Legislature's power to increase or diminish the penalties for the enumerated offenses.

> "The argument is without merit. A statute which is unconstitutional at the time of its enactment does not acquire a valid status simply by reason of a subsequent amendment to the basic charter or by the adoption of a new one. In Washington National Ins. Co. v. Board of Review, 1 N.J. 545, 64 A.2d 443, 445 (1949), we said: '* * * the constitutional validity of legislation in this regard is to be measured by the organic law in force when the legislation was adopted, except to the extent that the later constitution is made retroactive.'"

To the same effect see: State v. Hogan, 20 N.J.Super. 1, 89 A.2d 76; People ex rel. Hanrahan v. Caliendo, 50 Ill.2d 72, 277 N.E.2d 319.

Based on the above authority, it is clear the "Hickey Law" was not automatically resurrected by the inaction of the 1973 Legislative Assembly nor will it be on July 1, 1973.

Chapter 513, Session Laws of 1973, is a general recodification and revision of the Montana Criminal Code. Sections 94-2401 through 94-2403, R.C.M. 1947, were renumbered by Chapter 513 but were otherwise unaffected. The new code is effective January 1, 1974.

The renumbering of sections 94-2401 through 94-2403 did not reenact the heretofore invalid provisions. The "Hickey Law", while still carried by the codifier in the Revised Codes of Montana, is nevertheless null and void and has been since its passage in 1937. It cannot be resurrected without a specific amendment done under the authority of Article III, section 9,

Constitution of Montana, 1972. An attempt to amend section 94-2401, R.C.M. 1947, by reference to that title only would have been void under the provisions of Article V, section 25, Constitution of Montana, 1889, which provides:

"No law shall be revised or amended, or the provisions thereof extended by reference to its title only, but so much thereof as is revised, amended or extended shall be re-enacted and published at length."

Also of note is the Criminal Law Commission's explanatory comment with its Revised Proposed Montana Criminal Code of 1973, which was introduced substantially as Senate Bill 109 and passed to become law as Chapter 513, Session Laws of 1973. The comment reads:

"The preceding substantive criminal code includes nothing on the crimes of abortion, gambling, lotteries and gun control because of the emotional nature of these issues. It is assumed that the existing law on abortion, gambling, lotteries and gun control will be retained."

Having considered the issues, we order that a writ of supervisory control be issued directing respondent court to vacate its order dismissing the Information in Cause No. 9033 in the district court of the second judicial district.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.

- 12 -